## ADRIAN JOHNSON V. STATE

No. 31,719. April 27, 1960
Motion for Rehearing Overruled June 22, 1960

*Joe S. Moss* and *Bernard A. Golding,* Houston 2, for appellant.

*Dan Walton,* District Attorney, *Samuel H. Robertson, Jr., Lee P. Ward, Jr.,* Assistants District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

BELCHER, Judge.

The conviction is for murder; the punishment, death.

The appellant and Joe Edward Smith were jointly indicted. A severance was granted and the appellant was placed on trial.

The deceased, a boy twelve years of age, left home on his bicycle going swimming shortly after 3:00 P.M., Monday, July 20. Upon his failure to return home, a search was made until late that night without finding the boy and the search was resumed the next morning. About 8:30 A.M., July 21, the deceased's bicycle was found beside a small house on a lot occupied only by the house which was referred to during the trial as a shack. The shack was located equidistant from the sides of the lot and about 50 yards from the street. An examination of a closed disconnected electric refrigerator in the shack revealed the nude body of the deceased. The body and its position evidenced the fact that it had been forced into the refrigerator.

The testimony shows that the appellant, Joe Edward Smith, Ira Lee Sadler, Roy Miller and two or three other boys were seen within a short distance of the shack between 5:30 P.M. and 6:30 P.M., July 20. The time varying according to different witnesses. The owner of the Chuck Wagon cafe while testifying identified the appellant and Joe Edward Smith who were with four or five other boys and stated that they were at the cafe a few minutes after 6 P.M. and were walking in the direction of the shack when he last saw them.

The state introduced appellant's signed written statement in evidence in which he stated that at about 6:30 P.M. he was in company with Joe Smith, Dave Climmets, Billy Joe Bufferin, Johnnie Robbins, Clarence Robbins, Clyde Robbins, Charles Archer, Ira Lee Sadler and "Man" Miller; that as they were walking down West Gray they saw a little white boy riding a bicycle; that "Man" Miller said "let's get him"; that when the little boy got up to them Ira Lee (Saddler) grabbed him and throwed him off the bicycle; that the boy ran across the street to the "dirt yard" and fell; that Clarence Robbins said the "dirt yard" office was open and opened the door; that Ira Lee (Saddler) pulled the boy into the office; that "Man" Miller asked the boy if he had any money and the boy said "No. Please let me go"; that Dave Climmets said "lets *molesterate* him", and Joe (Smith) said OK.

The confession describes how the boy was then forced to submit to rectal sodomy by appellant and each of his companions, being held in turn by Ira Lee (Saddler) and Dave (Climmets) "with a head lock". During this ordeal the boy "was groaning and begging us not to do that". Dave (Climmets) and Ira (Saddler) then "forced the boy into the ice box that is in this office, and he was fighting back, but they got him in the box and closed the door on him. All the time they was putting the boy in the ice box he was screaming them not to do that".

Appellant's testimony shows that he was arrested at about 1:30 A.M. and in his written statement he states that it was signed at 6:30 A.M. on the same day.

The evidence shows that deceased's blood group was "O"; that the blood group of the appellant, Joe Edward Smith, Robert Miller, Roy Miller was "O"; that the blood group of Arthur Clemens and Charles Archer was "A"; and that the blood group of Ira Lee Saddler was "B".

614

An examination was made of the wearing apparel taken on July 23 from the hereinafter named persons.

An analysis of several spots of human blood stain on the front of the left trouser leg of the blue jeans of Robert Miller showed the blood to be group "O". An examination of Roy Miller's trousers showed a spot of fecal material near the top of the fly on the right side. The human blood stain or spot on Joe Edward Smith's clothing was insufficient to determine the blood type. A human hair found in Ira Lee Sadler's trouser's pocket was identical in all respects to the hair removed from the head of the deceased.

The evidence further shows that an examination of appellant's penis, the penis of Joe Edward Smith and the penis of Robert Miller showed a bruise or a definite discoloration on the underneath side near the head.

Dr. Jachimczyk, whose qualifications as a pathologist were admitted and stipulated, testified that he performed an autopsy on the body of the deceased. He expressed the opinion that the cause of deceased's death was "asphyxia due to suffocation in association with sodomy." He further testiifed that his examination of the deceased's body showed numerous scratches and abrasions, that there were purple-blue discolorations on each side of the neck and over the buttocks, and that the examination of the rectum showed that it was overstretched, that there were lacerations and tears on the inside which were caused by something being inserted into the rectum, that they were in his opinion very painful and there was evidence of a very marked resistance by the deceased. He further testified that asphyxia is a lack of oxygen to the various organs of the body which require oxygen to sustain life; that the examination of the deceased's body showed a combination of injuries which are responsible for the asphyxia. "The most important and major of them is the rupture, or tear, of the left leaf of the diaphragm with a rupture of the stomach with compression upon the left lung by the encroaching stomach and stomach content. * * * In this body there was a two-inch hole in the fundus of the stomach, the fundus of the stomach being the upper portion of the stomach. There was that injury, and there was also an injury in the neck, in the form of swelling in the neck. The bones of the neck, however, were not fractured, so that the mechanism of the asphyxia, that is, of the suffocation or lack of oxygen, is the injury to the left chest and the injury also in the neck";

and that in his opinion the injuries to the neck could have been made by a headlock placed on the deceased.

The witness further testified in response to the following question: "Now, the injury to the left chest, or diaphram, doctor, what sort of injury was that, or, in your opinion, what type of force was applied to cause the injury you saw there?" Answer: "In my opinion, that type of injury would be caused by a squeezing or a bear-hug type of pressure on the chest. It could also be caused, however, if the chest were to strike something hard. I do not think that the latter occurred in this instance, inasmuch as I did not find and there was none present, of a hemorrhage in the wall itself, that is, in the skin itself, which is a more common finding if the chest and the abdomen were to have hit something. Instead, in my opinion, this injury was the result of a squeezing it was a squeezing-type injury, or a mugging type, or a bear hug, type, if that makes it clear"; and that in his opinion all of the injuries suffered by the deceased occurred at the same time.

Appellant testfying in his own behalf denied any connection with or knowledge of the murder of the deceased. His testimony shows that he was not at or near the shack at the time of deceased's death but was at another place playing dominoes until 6:30 P.M., July 20. After 6:30 P.M. he, Robert Miller, Joe Edward Smith, Ira Lee Saddler and David Arthur Clemens were boxing until 10:30 or 11:00 P.M., July 20.

The testimony of numerous witnesses called by the appellant support and corroborate his alibi.

Appellant admitted signing the statement introduced in evidence by the state, but says that it is not true and that he signed it because of the brutal beating of him by the officers, that he was scared because the officers threatened to beat him again, and also because they promised him that he could see his mother and a lawyer if he would sign it, and that he never read it. He further testified that only Officers Hopper, Mouser and Mackey beat and threatened him before he signed the statement.

A witness called by the appellant testiifed that as she walked by the lot on which the shack was located at 3:30 P.M., Monday, July 20, she heard the muffled screams of a boy, hesitated for a moment but did not see anyone at the shack and walked on.

Officers Hopper, Mouser and Mackey, who were the only officers appellant said that abused him, and also Officer Kindred, the officer to whom the statement was made, each denied while testifying that they beat, threatened or induced the appellant to make said statement. Their testimony further shows that the appellant was arrested about 2:30 A.M. and signed the written statement about 6:30 A.M. the same day.

The court in its charge authorized the jury to find the appellant guilty of murder with malice if they found beyond a reasonable doubt that he either acting alone or as a principal killed the deceased by: (1) strangling him with his hands, or (2), suffocating him by squeezing his chest with his arms and hands, or (3), suffocating him by placing him inside a refrigerator and closing the door thereby sealing him inside of said refrigerator, or (4), some way or manner by instruments and weapons to the grand jury unknown, through a mistake or accident while intending to commit the offense of sodomy, or (5), while in the act of preparing for or executing the offense of sodomy.

The court in its charge applied the law as set forth in Art. 42 P.C., which reads as follows:

"One intending to commit a felony and who in the act of preparing for or executing the same shall through mistake or accident do another act which, if voluntarily done, would be a felony, shall receive the punishment affixed to the felony actually committed."

The several acts described in the charge submitting the case to the jury, except that portion of (4) beginning with the word "through" and all of (5), were alleged in the indictment. No objections were made to the indictment.

The jury returned a general verdict finding the appellant guilty of murder with malice, with no designation as to the act upon which guilt was predicated.

Under such circumstances, the conviction will be applied to the act or acts finding support in the evidence.

The facts and circumstances in evidence were sufficient to warrant the jury in concluding that the appellant either acting alone or as a principal with his companions killed the deceased

by strangling him with his hands, or by suffocating him by squeezing his chest with his arms and hands, or while intending to commit sodomy and in the act of preparing for or executing the act of sodomy killed the deceased.

The state first introduced sufficient testimony to authorize the admission in evidence of the written statement of the appellant in accordance with the requirements of Art. 727 C.C.P., and then offered the written statement in evidence.

Appellant made no objection to the introduction of the statement into evidence on the ground that it was involuntarily made.

No error appears in the admission of said written statement into evidence.

Appellant contends that the evidence at the most raises a fact issue that he and his companions intended to commit sodomy which act he abandoned or it had ended before Dave and Ira forced the boy into the refrigerator which caused his death and that in the later act he did not participate in any manner.

The written statement of the appellant shows that he actually engaged in the act of sodomy with the deceased and that he was present when his companions committed such act, hence there was no evidence of the abandonment of the design to commit sodomy, and the court did not err in including it in the submission of the case to the jury. Further, the evidence, the court's charge and the general verdict of the jury warrant and authorize a finding by the jury that the act or acts causing deceased's death were committed before he was placed in the refrigerator.

It is insisted that error was committed when the state's attorney asked Johnnie Routte, the state's rebuttal witness, on direct examination the following question: "I will ask you if it isn't true that this defendant, in the past, has had occasion to commit rectal sodomy upon you," and he replied: "I couldn't answer that question." To which appellant objected on the ground that it forced him in the presence of the jury to request their retirement in order for him to object to said question and move for a mistrial; and both were overruled.

In the absence of the jury appellant called the state's attorney as a witness and proved that he did not have any information

that Johnnie Routte had been convicted of sodomy. Appellant further objected on the ground that the question was asked in bad faith and known by him to be false.

The state introduced in the absence of the jury an affidavit of Johnnie Routte in which he stated that the appellant had had rectal sodomy with him.

Appellant while testifying on direct examination stated that he had never molested any white boys or any other boy. On cross-examination the appellant testified, without objection, that he had not had any sodomy relationships with Johnnie Routte. This testimony was introduced before Johnnie Routte was called as a witness.

The trial court, both orally and in the charge, instructed the jury to disregard both the question complained of and the answer for any purpose.

It appears from all the facts surrounding the question complained of that no reversible error is shown.

Appellant objected to the court giving application to Art. 42, P.C. in its charge to the jury because there was no evidence to support it, and he further objected because the charge as given failed to require the jury to find that deceased's death could have been reasonably foreseen from the act or acts of sodomy, and further that the means used in the commission of the act or acts of sodomy were not such as would ordinarily result in death.

The evidence supports and authorizes the application of Art. 42 P.C., in the charge to the jury. The charge set out said statute and in the language of the statute authorized a conviction thereunder. The charge is in accord with that set out in 1 Branch (2), 66, Sec. 70.5 and Cook v. State, 152 Tex. Cr. Rep. 51, 211 S.W. 2d 224. No error is shown.

The objection to the court's charge on the ground that the court failed to instruct the jury on the law of murder without malice cannot be sustained because his only defense was that of alibi. If he was not present when the alleged offense was committed, he was entitled to an acquittal and a charge on the law of murder without malice was not applicable. Cassell v. State, 154 Tex. Cr. Rep. 648, 216 S.W. 2d 813; Rayson v. State, 160 Tex. Cr. Rep. 103, 267 S.W. 2d 153.

The judgment is affirmed.

Opinion approved by the Court.