Howard B. STICKNEY, Appellant,

v.

O. B. ELLIS, Director, Texas Department of Corrections, Appellee.

No. 18623.

United States Court of Appeals Fifth Circuit.

Feb. 9, 1961.

O. John Rogge, New York City, John P. Spiller, Houston, Tex., for appellant.

Samuel H. Robertson, Jr., Dan Walton, Houston, Tex., for appellee.

Before TUTTLE, Chief Judge, and JONES and BROWN, Circuit Judges.

TUTTLE, Chief Judge.

This is an appeal from the dismissal of a petition for writ of habeas corpus by the trial court, following a state murder conviction and death sentence, without conducting a hearing to determine the truth or falsity of appellant's claim that his confession used in the State Court trial had been illegally obtained. The appellant also complains of the failure of the trial court to hold a hearing on the contention that he had been denied effective assistance of counsel.

In his petition below, Stickney also charged that the State Court had denied him his constitutional rights in failing to grant a new trial for newly discovered evidence. On this charge the habeas corpus court held an extended hearing. At its conclusion, the trial judge held that the only evidence to support the charge was "fantastic and false" and held that there was no merit in the claim. Appellant does not appeal from this ruling.

As to the first two contentions, Judge Hannay, the trial judge, reviewed all the evidence submitted at the State Court trial and all the records in the State Court and those in the habeas corpus proceedings, including briefs of counsel urging that the court hold a hearing touching on the voluntary character of the confession.

Reference to the transcript of the State Court trial shows that full inquiry was

made by the trial judge into the circumstances of the giving of the statement by which appellant confessed commission of the crime, both by defense counsel's taking the State's witnesses on voir dire out of the presence of the jury, and then in open court before the jury, and that the court permitted the statement to be introduced in evidence under an appropriate charge to the jury.

We think the trial judge could properly determine, as he did on the record before him, that the statement was made voluntarily and its receipt in evidence was in no way illegal.

We find that the appellant has exhausted his state remedies and that the trial court could properly entertain the application for the writ.

 In their brief filed in this court, counsel for the appellant make repeated and extensive arguments touching on the Constitutionally guaranteed rights of an accused person. These statements are, in the main, unexceptionable. It is, or should be, recognized by every American court now that a coerced confession or inculpatory statement, whether the coercion results from physical or mental pressure, may not be received in evidence in a criminal case, and upon a finding that such confession or statement was drawn from an unwilling accused, a conviction resulting therefrom should be set aside. See Brown v. State of Mississippi, 1936, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682; Chambers v. State of Florida, 1940, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716; to the recent cases of Leyra v. Denno, 1954, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948; Fikes v. State of Alabama, 1957, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed. 2d 246; Payne v. State of Arkansas, 1958, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed. 2d 975; Spano v. People of State of New York, 1959, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265; and Blackburn v. State of Alabama, 1960, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242.

 So, too, since Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L. Ed. 158, it is thoroughly established that every person accused of a capital crime in a state prosecution is entitled to have the effective assistance of counsel. See also Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61; Tomkins v. State of Missouri, 323 U.S. 485, 65 S.Ct. 370, 89 L. Ed. 407; and Williams v. Kaiser, 323 U. S. 471, 65 S.Ct. 363, 89 L.Ed. 398. For the most recent statement of this principle see McNeal v. Culver, 81 S.Ct. 413.

 There is no doubt, either, that in a proper case the fact of the denial of either of the protections just discussed can be found in a Federal habeas corpus proceeding, notwithstanding a prior contrary decision by the state courts. As said by the Supreme Court in Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 437, 448, 97 L.Ed. 469, the District Court's review on habeas corpus of a state conviction is not "a case of a lower court sitting in judgment on a higher court. It is merely one aspect of the Supremacy Clause of the Constitution whereby federal law is higher than State law."

 However, it has been authoritatively decided by the Supreme Court that unless upon reading the transcript of the proceedings of a state court trial, the habeas corpus judge finds a "vital flaw" in the state court proceedings, he may, although he is not required to, accept the determination of the subsidiary facts creating the constitutional issue as binding. See Brown v. Allen, supra. Also see Rogers v. Richmond, 357 U.S. 220, 78 S. Ct. 1365, 2 L.Ed.2d 1361. There, in denying certiorari to the Court of Appeals for the Second Circuit, the Supreme Court restated the proposition enunciated by Mr. Justice Frankfurter in his separate opinion in Brown v. Allen. The Supreme Court, however, has granted a subsequent review of the later opinion of the Court of Appeals for the Second Circuit in United States ex rel. Rogers v. Richmond, 271 F.2d 364.

We have here, then, the question whether the District Court was in error in accepting the determination of the Texas Trial Court as affirmed by the Court of Criminal Appeals, Stickney v.

State, Tex.Cr.App., 336 S.W.2d 133, certiorari denied 363 U.S. 807, 80 S.Ct. 1245, 4 L.Ed.2d 1151, on the issue of voluntariness of the confession without conducting a further hearing to permit appellant to relitigate that issue.

We have carefully read the transcript of the State Court trial. We find that upon the tender in evidence of the statement signed by Stickney proof was made outside the presence of the jury to permit the trial court to make the preliminary determination as to the admissibility of the statement,[1] counsel for Stickney took each witness for the state on voir dire and examined him at length as to the time, place and circumstances surrounding the questions and statements that were taken. This examination disclosed no circumstances of a coercive nature, no lack of education, no racial discrimination, no prolonged period of questioning, no denial of opportunity for Stickney to see his mother in private (he saw her on at least two occasions), and no denial of the right to consult in private with his privately employed counsel. It disclosed the facts that Stickney had been arrested under a warrant charging him with the murders of Shirley Barnes and her husband and that there was outstanding a Federal warrant for his arrest on a charge of flight across state lines to escape prosecution. It also disclosed that he had not been indicted or been given a hearing before a Magistrate. It disclosed the fact that Stickney conferred at least two times with his lawyer during the period prior to the making of the statement. The testimony disclosed the fact that Stickney was taken to the area where the body of the husband had been found, for the stated purpose of seeing "if he could show me where he threw the body" and also to the area where the killing of Shirley was thought to have taken place. During this trip, one of the officers showed Stickney six "admittedly gruesome" photographs of the body of the victim, in an effort, the officers said, to "see if he was telling the truth about the way he disposed of her body".[2]

The trial court held that the showing made warranted the submission of the statement to the jury, whereupon much of the examination upon direct and cross-examination was repeated to the jury. The judge, in his charge to the jury, said:

"You are instructed that before you may consider the purported statement of the defendant, which is in evidence before you as exhibit No. 16, for any purpose you must first believe from the evidence beyond a reasonable doubt that the same was

1. Lt. Doss, the officer in charge of the investigation, testified as follows:

"Q. Were you present when this statement was made? A. Yes sir, I was.

"Q. Was the statement which Howard B. Stickney made to you reduced to writing? A. Yes sir.

"Q. Was it signed in your presence? A. Yes sir.

"Q. Who signed it? A. Howard B. Stickney.

"Q. Prior to the time he made this statement to you, was a warning given to the defendant, Howard B. Stickney? A. Yes sir.

"Q. What warning was given to him? A. This warning that is at the head of the statement, the first paragraph.

"Q. What warning was that? A. 'I, Howard B. Stickney, after first being duly warned by W. C. Doss, the person to whom this statement is made, as follows: First, that I do not have to make any statement at all; second, that any statement made by me may be used in evidence against me in the trial or trials of the offense or offenses concerning which this statement is made, to hereby do made [sic] the following voluntary statement:'.

"Q. Lt. Doss, after the warning which you have just read was given to this defendant, he made this statement to you and signed it in your presence? A. Yes sir, he did."

2. Under Texas Law no statement made by the accused while so held and questioned can be introduced into evidence unless written and signed by the accused. The trial court and the prosecuting officer strictly avoided the violation of this rule. The only exceptions were as to matters brought out by defense counsel and later explained on re-direct examination. This is permissible under Texas law.

voluntarily and freely made by the defendant and signed by him.

"If you believe from the evidence, or if you have a reasonable doubt thereof, that said purported statement was not freely and voluntarily made and signed by the defendant, or that same was made as a result of coercion, complusion [sic] or force, either physical or mental, or by reason of any promise made to the defendant, then you will not consider said statement for any purpose whatsoever."

Following the trial and filing and over-ruling of a motion for a new trial by appointed counsel, other counsel, including those now representing Stickney, entered the case and filed an amended motion for new trial, attacking the admissibility of the conviction. On appeal to the Court of Criminal Appeals the judgment of conviction was affirmed. In its original opinion the court primarily discussed the weight of the evidence and certain procedural points not now in issue. Then, on motion for re-hearing the appellate court dealt extensively with the attack on the admissibility of the confession. The court took as true, as it was required to do, all the testimony of the officers, inasmuch as none of this was controverted either by the accused himself or by his mother or by the lawyer who represented him until after the statement had been signed. The Texas court found that the questioning and obtaining of the statement were not of such a character as to make the statement inadmissible as a matter of law.

With the transcript of the testimony and the record of the State Court proceedings before him, the habeas corpus trial judge, without a further hearing on the facts, made the following finding:

"Considering the first two counts together, I find that at the time of the written confession made by the petitioner, he had a competent counsel of his own choosing who had instructed him before the confession, both orally and in writing, not to make any statement, that he did not have to make any statement, and should not make a statement.

"I further find that at the time the confession was made petitioner was of mature age (past 20), educated (equivalent to a high school education), husky (five foot eleven inches in height and weighing 180 pounds), and a normal young man, who had served a full term of enlistment in the Army and until after the alleged homicide held a responsible position with the State of Texas. (See: Stickney v. State [Tex.Cr.App.], 336 S.W.2d 133.)

"I further find that the confession was freely and voluntarily made and that it was not made under any sense of fear or made as a result of any intimidation or coercion or as a result of any promises, and that the petitioner thoroughly understood the nature of the confession and contents thereof and knew that he was under no obligation of any kind to make it. See Leonard v. United States [9 Cir.], 278 F.2d 418, 421."

In his petition for habeas corpus, the appellant, in colorful language containing a skillful mixture of fact and argument which is carried forward in his purported statement of fact in his brief in this Court, charges that he was questioned long hours, was kept from consultation with the counsel, prevented the opportunity to see his mother, was promised psychiatric treatment if he would confess, was subjected to public embarrassment by being questioned in the presence of newspaper and radio and television reporters and that he finally broke down and signed the statement prepared by others for his signature. This statement he now says was a complete fabrication.

There is nothing in the transcript of the state trial that suggests these facts, other than the fact that Stickney was in custody when the statement was made, that he voluntarily talked to newspaper and other news reporters and that he was frequently questioned on several different

days. This was explained by the officers' testimony that they were "checking out" statements he voluntarily made to them from time to time.

█ Whatever may have been the reason for their not having done so, Stickney's two able trial lawyers did not offer a single line of evidence attacking the testimony of the prosecuting witnesses touching on the voluntariness of the statement or touching on the fact that it was dictated by Stickney himself over a period of an hour and a half to a stenographer, written down by her, and read by him before it was signed. If a habeas corpus court can accept and rely on the determination of the underlying fact issues relating to the voluntariness of a confession, as we think it can, Brown v. Allen, supra, it would be unthinkable if such right of reliance could be destroyed by the withholding of available evidence on the trial and its subsequent production for the first time on the habeas corpus hearing. We think, therefore, that the habeas corpus court had a right to give the finding of the state trial judge exactly the same weight and had the same right to accept it as if all of the matters now presented for the first time had been testified to on the trial and had been resolved against the appellant. This is so because no reason is assigned for the failure of appellant to put into the scales all he had to weigh them in his favor when the state court was passing on this very issue.

This record discloses no "vital flaw" in the state court proceedings. Rogers v. Richmond, 357 U.S. 220, 78 S.Ct. 1365, 2 L.Ed.2d 1361. In fact a reading of the record discloses that the trial court and counsel for the accused meticulously guarded all rights of the accused and adequately and properly dealt with each matter presented on his behalf. This, then, leaves only the question as to whether on the "undisputed portions of the records" (Thomas v. State of Arizona, 356 U.S. 390, 78 S.Ct. 885, 887, 2 L.Ed.2d 863) the trial court should have found that the confession was coerced as a matter of law. United States ex rel. Rogers v. Richmond, 2 Cir., 271 F.2d 364, 369.

█ We conclude that in no decided case has the Supreme Court held that the facts disclosed on this state court record would require such a holding. See United States ex rel. Petersen v. La Vallee, 2 Cir., 279 F.2d 396, certiorari denied 81 S.Ct. 289.

The complaint, separately made in the petition for habeas corpus, that appellant was denied effective aid of counsel in reality merges into the question heretofore discussed. It goes only to the question as to whether the incriminating statement was voluntary. It is not disputed that Stickney was represented until after the statement was given by counsel, who had ample time and opportunity, as found by the state court, to consult with his client, and in fact did so, and in fact strongly urged him not to give a statement. The state court record discloses that he had local counsel when he was arrested in Canada, he was met by counsel when he arrived at the Houston airport, he conferred with counsel on at least two occasions before making his statement and he was ably represented by counsel during the trial. The specific issue touching on the imagined effect of counsel's inability to persuade Stickney not to give a statement was either ignored or decided against him on the same finding of voluntariness that we have heretofore discussed.

We conclude that the trial judge followed a permissible course of action when he accepted the determination of the state court on the fact issue of voluntariness in the absence of any "vital flaw" in such proceedings. His refusal to hold a de novo hearing on the same issue was not error, nor did he err in finding that the undisputed facts did not warrant a holding that Stickney had been deprived of his constitutional rights as a matter of law.

The judgment is affirmed.