Adrian JOHNSON, Petitioner,

v.

O. B. ELLIS, Director, Texas Department of Corrections, Huntsville, Texas, Respondent.

Civ. A. No. 13552.

United States District Court
S. D. Texas,
Houston Division.

May 18, 1961.

Bernard A. Golding, Houston, Tex., for petitioner.

Will Wilson, Atty. Gen., of Texas, Frank Briscoe, Dist. Atty., Harris County, Tex., and Samuel H. Robertson, Jr., and Lee P. Ward, Jr., Asst. Dist. Attys., Harris County, Tex., Houston, Tex., for respondent.

INGRAHAM, District Judge.

On March 10, 1961, there was filed in this court on behalf of Adrian Johnson an application for writ of habeas corpus. On May 2, 1961, a hearing was held on said application. This hearing continued for two days; fifteen witnesses, including petitioner, were heard.

Johnson was tried and convicted of murder with malice in the Criminal District Court of Harris County, Texas, in September 1959. His punishment was assessed at death. Petitioner then appealed to the Court of Criminal Appeals of Texas. In a written opinion of April 27, 1960, Johnson v. State, Tex.Cr.App., 336 S.W.2d 175, that court affirmed unanimously. Petitioner's motion for rehearing thereof was denied without written opinion on June 22, 1960.

Thereafter, Johnson filed a petition for writ of certiorari in the Supreme Court of the United States. In such petition he urged primarily that his "confession" or statement of July 22, 1959, admitted at trial, was obtained through police coercion. Certiorari was denied on December 19, 1960, 364 U.S. 927, 81 S.Ct. 355, 5 L.Ed.2d 267.[1]

■ Petitioner has not sought the writ of habeas corpus in the Court of Criminal Appeals of Texas. Hence, upon this procedural posture, a jurisdictional question arises. Normally, exhaustion of state remedies is required as a prerequisite to federal jurisdiction. 28 U.S. C.A. § 2254. Resort to state habeas corpus remedies must be had before federal relief is sought in the usual case. Darr v. Burford, 1950, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761; 1 Barron & Holtzoff, Federal Practice and Procedure, Sec. 45 (1960); 1 Moore's Federal Practice Sec. 0.230(2) (2d Ed.1960). Our court of appeals has required recourse to state habeas corpus remedies as a preliminary to federal jurisdiction in those cases where federal constitutional issues were not raised earlier in the state proceedings. United States ex rel. Connelly v. Cormier, 5 Cir., 1960, 279 F.2d 37; Williams v. Moore, 5 Cir., 1961, 285 F.2d 590, 591.

■ Where, on review of his conviction, a petitioner's claim of federal constitutional right has been decided against him by the highest state court and application for certiorari has been denied by the Supreme Court, such petitioner has satisfied the requirements as to exhaustion of state remedies of 28 U.S.C.A. § 2254. In those circumstances petitioner need not endlessly pursue collateral state remedies nor relitigate fruitlessly con-

---

1. Mr. Justice Douglas was of the opinion certiorari should have been granted.

stitutional issues. Brown v. Allen, 1953, 344 U.S. 443, 73 S.Ct. 397, 437, 97 L.Ed. 469.[2] Our court of appeals cited Brown v. Allen, supra, in United States ex rel. Connelly v. Cormier, supra, and said in 279 F.2d at page 38:

"The cases in which resort to the federal courts has been permitted without first seeking habeas corpus or some other remedy available in the state courts have been like Brown v. Allen * * * where the pursuit of such remedy in the state courts was obviously useless, because the prisoner's claim of federal constitutional right had been decided adversely to him by the state supreme court, and an application for certiorari had been denied."

Hence, petitioner has met the requisites of 28 U.S.C.A. § 2254, as interpreted in Brown and Cormier, supra, if his constitutional arguments were urged upon and rejected by the Court of Criminal Appeals of Texas, certiorari having been denied. Petitioner's federal constitutional contentions are three, all emanating from the due process clause of the Fourteenth Amendment: (1) conviction is based on a coerced confession obtained from petitioner after protracted questioning, repeated threats, actual beatings and physical abuse, and denial of access to counsel and family; (2) petitioner was denied the right to testify at his trial to the effect that during his incarceration in the Harris County jail, while indicted and awaiting trial, he was removed to a distant building by Texas Rangers in order that an additional "confession" could be obtained; and (3) the trial court permitted the introduction by the state of a collateral crime—rectal sodomy—not embraced in the murder indictment.

The court is of the opinion that petitioner's constitutional arguments were urged upon, considered and rejected by the Court of Criminal Appeals of Texas. Petitioner's counsel, Mr. Golding, moved in the state trial that the controverted statement of July 22, 1959, which had been admitted earlier, be stricken from the record and taken from the jury's consideration (Pl.'s Exh. 2–B, Tr. 496– 500).[3] The basis of this motion was its allegedly having been obtained through police coercion. Counsel's motion to strike on these constitutional grounds was denied (Pl.'s Exh. 2–B, Tr. 500). An exception was taken to this ruling (Pl.'s Exh. 2–B, Tr. 500); this issue went to the Court of Criminal Appeals as Defendant's Bill of Exception No. 24. That court in its opinion at 336 S.W.2d 175 reviewed petitioner's claims of coercion and the police reply thereto at page 178. It then said in 336 S.W.2d at page 179:

"The state first introduced sufficient testimony to authorize the admission in evidence of the written statement of the appellant in accordance with the requirements of Art. 727, C.C.P., and then offered the written statement in evidence.

"Appellant made no objection to the introduction of the statement into evidence on the ground that it was involuntarily made.

"*No error appears in the admission of said written statement into evidence.*" (Emphasis supplied.)[4]

2. The Supreme Court, per Mr. Justice Reed, said in 344 U.S. at page 447, 73 S.Ct. at page 402:

"We conclude that all required procedure for state review of the convictions had been exhausted by petitioners in each case before they sought the writs of habeas corpus in the federal courts. In each case petitions for certiorari to this Court for direct review of the state judgments rendered by the highest court of the state in the face of the same federal issues now presented by habeas corpus had been denied."

3. All references to transcript (Pl.'s Exh. 2–A and 2–B) are to the transcript of the trial of September 1959 in the Criminal District Court of Harris County, Texas. Such references are not to any record of the hearings before·this court.

4. The court believes the coercion issue was decided adversely to petitioner by the Court of Criminal Appeals despite

This court believes that the coercion issue was rejected by the Court of Criminal Appeals in the above-quoted passage, particularly the italicized portion thereof. Certainly, the issue was put before that court by petitioner's Bill of Exception No. 24. The basic grounds for the charge of coercion, urged by Mr. Golding at the trial in Tr. 496–500, were noted by the court in 336 S.W.2d at page 178. Petitioner's motion for rehearing, denied by the Court of Criminal Appeals on June 22, 1960, without written order, dwelt primarily on the issue of a coerced confession. Johnson's petition for writ of certiorari in the Supreme Court stressed the coercion question. The trial court's charge to the jury of September 26, 1959, clearly set forth the coercion contention or question (Pl.'s Exh. 3, pp. 7–8). Petitioner's motion for new trial of October 2, 1959, charged error in the admission of the statement (Pl.'s Exh. 3, pp. 57–58). Respondent's "Return and Answer * * * and Motion To Dismiss", filed in this cause on March 21, 1961, urges in III thereof that the coercion issue has already been decided adversely to petitioner in the state courts.

■ The court is therefore of the opinion that it has jurisdiction over this petition consonant with the teachings of Brown and Cormier, supra. Resort to state habeas corpus remedies was not required where, as here, the federal constitutional issues were raised at trial, argued on appeal to the highest state court, and presented to the Supreme Court in the application for certiorari.[5] It is clear that the proper procedural route was followed as to the other two constitutional contentions of petitioner.

The trial court refused to permit testimony by petitioner as to his removal by Texas Rangers from the Harris County, Texas, jail to another area on August 15, 1959, where he was kept several hours in an effort to obtain another statement (Pl.'s Exh. 2–B, Tr. 340–345; the statement obtained on August 15 is Pl.'s Exh. 1). Art. 710, Vernon's Code of Crim. Proc. of the State of Texas, is said by petitioner to permit such testimony. By petitioner's Bill of Exception No. 22 (Pl.'s Exh. 2–B, Tr. 342), the constitutional aspects of such right to testify were raised and presented to the Court of Criminal Appeals. That court in its affirmance of April 27, 1960, rejected the constitutional contention. Petitioner's third constitutional argument was likewise rejected by the Court of Criminal Appeals. Petitioner complains of the question of the state's attorney to a state's witness as to a possible relationship involving rectal sodomy between the witness and petitioner (Pl.'s Exh. 2–B, Tr. 424–428). Petitioner claims that the trial court thereby permitted the introduction by the state of the issue of a collateral crime, sodomy, not embraced in the murder indictment (Pl.'s Exh. 2–B, Tr. 431, Bill of Exceptions No. 23). In 336 S.W.2d 175, at page 179 the Court of Criminal Appeals rejected petitioner's arguments with respect to this incident.

A brief statement of events of July 20–22, 1959, follows to lend context to the coercion charge subsequently to be discussed. Petitioner, then seventeen, is a Negro possessed of a junior high school level education. Deceased, a white boy twelve years of age, left his home on his bicycle on the afternoon of July 20.

---

that court's statement or notation that petitioner failed to object to introduction of the "confession" on the ground of alleged coercion. While petitioner did not object to its admission on constitutional grounds, objecting on another basis and excepting to its admission (Pl.'s Exh. 2–A, Tr. 152–153), petitioner moved to strike the statement, etc. at the close of the trial; it thereby raised and preserved the coercion charge (Pl.'s Exh. 2–B, Tr. 496–500).

5. In view of this disposition of the jurisdictional question a discussion of the "special circumstances" doctrine which also negates the requirements of 28 U.S. C.A. § 2254 is omitted. That doctrine is discussed in Frisbie v. Collins, 1952, 342 U.S. 519, 521, 72 S.Ct. 509, 96 L. Ed. 541; Thomas v. State of Arizona, 1958, 356 U.S. 390 (note 1), 78 S.Ct. 885, 2 L.Ed.2d 863; 1 Moore's Federal Practice, Sec. 0.230(2), 2d Ed. 1960 (see especially page 2708).

On the morning of July 21, decedent's bicycle was found beside a small shack on a vacant lot. The nude body of deceased was found inside a closed disconnected refrigerator. The body had been forced into the refrigerator. Death was caused by asphyxia due to suffocation in association with sodomy (Pl.'s Exh. 2–B, Tr. 244).

The state introduced petitioner's signed written statement of July 22 (Pl.'s Exh. 2–A, Tr. 153–A) in evidence. Petitioner was arrested about 1:30 A.M. on July 22, and in his written statement he declares that it was signed at 6:30 A.M. on the same day. These are the principal points in the controverted "confession": (1) about 6:30 P.M. on July 20 petitioner and nine other young Negroes saw deceased riding his bicycle; (2) decedent was pulled off his bicycle and taken to the small shack; (3) deceased was then forced to submit to rectal sodomy by each of the ten boys; and (4) following this ordeal deceased was forced into the icebox by ones other than petitioner.

Petitioner admitted signing the statement (Pl.'s Exh. 2–B, Tr. 323). On trial, however, he denied, paragraph by paragraph, the statement (Pl.'s Exh. 2–B, Tr. 327–338). He claimed he signed it because of the brutal beating of him by Houston policemen (Pl.'s Exh. 2–B, Tr. 323).[6] Petitioner says he was frightened because the officers threatened to beat him again (Pl.'s Exh. 2–B, Tr. 321). The police allegedly promised petitioner that he could see his mother and a lawyer if he would sign the statement (Pl.'s Exh. 2–B, Tr. 315–316, 323). Petitioner never read the statement (Pl.'s Exh. 2–B, Tr. 329). He further testified that Officers Hopper, Mouser and Mackey beat and threatened him to obtain the statement (Hopper, Pl.'s Exh. 2–B, Tr. 311, 313, 314, 320–321; Mouser, Pl.'s Exh. 2–B, Tr. 311, 321, 322; Mackey, Pl.'s Exh. 2–B, Tr. 355, 356). Officers Hopper, Mouser and Mackey, who were the only officers petitioner said beat him, each denied beating or threatening petitioner in any manner (Hopper, Pl.'s Exh. 2–B, Tr. 466, 467; Mouser, Pl.'s Exh. 2–B, Tr. 436, 437; Mackey, Pl.'s Exh. 2–B, Tr. 477). Officer Kindred, the officer to whom the statement was given, denied inducing the statement in any unlawful manner (Pl.'s Exh. 2–B, Tr. 479, 480). Significantly, Mr. Jim Maloney, police reporter for the Houston Post, observed petitioner closely just after the alleged beatings were supposedly administered. Petitioner made no complaint to Maloney; Maloney saw no evidence of physical abuse of petitioner (Pl.'s Exh. 2–B, Tr. 452, 453, 454).

■ Petitioner's claims of coercion through beatings, threats, and the like were rejected by the jury at his trial. Such contentions were rejected by the Court of Criminal Appeals of Texas. This court has thoroughly examined the transcript of petitioner's trial in the Criminal District Court of Harris County, Texas; such transcript has been read in its entirety. I find no "vital flaw" in the state proceedings, and I could thereby have accepted the state's determination of the pertinent subsidiary facts without a hearing. Brown v. Allen, supra, 344 U.S. at page 506, et seq., 73 S. Ct. at page 445; Rogers v. Richmond, 1958, 357 U.S. 220, 78 S.Ct. 1365, 2 L.Ed. 2d 1361; Stickney v. Ellis, 5 Cir., 1961, 286 F.2d 755, 760. In view of petitioner's youth, the serious charges made by petitioner, and the crucial fact that the punishment is death, I chose rather to air this matter fully. Fifteen witnesses were heard in two days of hearings. Petitioner and all principals from the Houston police force were meticulously examined. I turn now to my findings based upon this hearing, the pleadings and exhibits, and the trial transcript. It is elementary, of course, that a coerced confession may not be received in evidence in a criminal case, and upon a find-

---

6. Petitioner stated in Pl.'s Exh. 2–B, Tr. 323:

"I signed it (the statement) because they beat me and they would not let me see my mother or my lawyer."

ing that such statement was drawn from an unwilling defendant, a conviction procured thereby should be set aside. Brown v. State of Mississippi, 1936, 297 U.S. 278, 280, 286–287, 56 S.Ct. 461, 80 L. Ed. 682; Ashcraft v. State of Tennessee, 1944, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192; 1946, 327 U.S. 274, 66 S.Ct. 544, 90 L.Ed. 667; Chambers v. State of Florida, 1940, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716; Malinski v. People of State of New York, 1945, 324 U.S. 401, 65 S. Ct. 781, 89 L.Ed. 1029.

Petitioner's testimony in the hearing in this court closely parallels his testimony in the state court. He was arrested at 1:30 A.M. on July 22, 1959. He was allegedly taken to Humble, Texas; he was badly beaten there to induce a confession. Returned to the Houston police station, he was beaten spasmodically until the challenged statement was procured at 6:30 A.M. that morning. His assailants, four in number, were officers Mouser, Hopper, Mackey and Cockrell. There was no other testimony to support petitioner's coercion charges.

After closely observing petitioner's demeanor and responses to cross-examination, the court is not impressed with his credibility. It is not hard to understand why a jury rejected his testimony as false. His tale of beatings, abuse, etc. struck this court as pure fabrication. Arrayed against petitioner's incredible, unsupported story of coercion is a coherent, plausible narration of the events from 1:30 A.M. to 6:30 A.M. on July 22. I now survey the overwhelming testimony against petitioner's claims with respect to coercion.

Officer Kindred typed the statement. He applied no coercive methods. Petitioner read and signed the statement voluntarily. Kindred observed nothing amiss about petitioner's person, and he warned petitioner that he need not make a statement. Officer Mouser, alleged assailant, denied striking Johnson. He says Johnson was never taken to Humble. Petitioner never asked for a lawyer or his relatives. Officer Hopper, another one accused by petitioner of physical abuse, categorically denied brutality. Johnson admitted his guilt in less than an hour and a half. Officer Cockrell, like petitioner, a Negro, denied touching petitioner. Cockrell saw no signs of physical mistreatment on petitioner. He heard Johnson make no request for counsel or family. Officer Mackey, another alleged tormentor, denied all. Petitioner was unmarked when Mackey saw him. Officer Clark similarly rejected charges of brutality. Captain Waycott, director of the homicide division of the Houston police department, observed petitioner closely on the morning of the statement; indications of physical abuse were absent. No outcry, protest or any form of accusation was made to any Houston police official with respect to coercion by Johnson. The actual questioning was brief. The entire interrogation was complete in a matter of less than five hours. Other officers buttressed this testimony. Counsel Golding's cross-examination in no way negated or weakened the police testimony.

Most significant was the testimony of three witnesses. Two of them were wholly independent of the Houston police. Their positions made them especially alert in observing petitioner's physical condition. Jim Maloney, reporter for the Houston Post, saw petitioner shortly after 6:30 A.M. Petitioner made no charge of brutality to Maloney. Reporter Maloney, one who by his very position was sensitive to charges of police misconduct, observed no evidence of mistreatment on petitioner. Substantiating Maloney was one Lee Tucker, reporter for KPRC-TV of Houston. He detected nothing amiss about Johnson's appearance or demeanor. No charges were made to Tucker by Johnson. Finally, Robert F. Crawford, police chemist and toxicologist, examined petitioner's body; petitioner was entirely unclothed for this examination; he found no marks or evidence of abuse.

■ The court is of the opinion that petitioner's statement (Pl.'s Exh. 2–A, Tr. 153–A) was given voluntarily. The dispute comes down finally to a choice

between petitioner's spurious story and the overwhelming array of credible testimony to the contrary. The state courts properly rejected petitioner's accusations of coercion.

■ Petitioner's two remaining contentions will now be considered. They can be dismissed summarily. Petitioner complains that the due process clause of the Fourteenth Amendment was violated when he was denied the right to testify at trial to events of August 15, 1959, when petitioner was removed from the county jail by Texas Rangers for the claimed purpose of procuring another "confession". The statement obtained that day is Pl.'s Exh. 1; it follows closely the version of July 22, 1959. In the present hearing petitioner's jailer showed through his jail records that petitioner was indeed taken from the jail for a time on August 15. At trial petitioner was asked by his counsel what happened on August 15. The state's objection that the events of that day were immaterial was sustained and an exception taken thereto (Pl.'s Exh. 2–B, Tr. 340, et seq.). Petitioner's Bill of Exceptions No. 22 was rejected by the Court of Criminal Appeals. Petitioner conceived the events of August 15 to be relevant as part of a continuing plot of police coercion and brutality, that is, it was thought the police conduct of August 15 would reinforce petitioner's charges as to police methods of July 22 (see petitioner's arguments in Pl.'s Exh. 2–B, Tr. 342–345). I find no constitutional violation in the exclusion of this proffered testimony. The matter, when viewed in connection with the singular absence of coercion on July 22, was wholly one of relevancy without constitutional significance. At the hearing petitioner's credibility with respect to this incident of August 15 was no more impressive than in connection with occurrences of July 22.

■ Next, it is contended the conviction offends the due process clause of the Fourteenth Amendment because the trial court permitted the district attorney to question a state's witness on a collateral matter not charged in the indictment. The prosecutor was permitted during the trial to inquire of state's witness Routte whether Johnson had committed rectal sodomy upon the witness (Pl.'s Exh. 2–B, Tr. 424). This question was asked in the presence of the jury. The indictment contained no charge that petitioner had sodomy relations with Routte. The trial court instructed the jury to disregard both the question complained of and the answer for any purpose (Pl.'s Exh. 3, pp. 8–9). The Court of Criminal Appeals found no error in the episode, 336 S.W. 2d at page 179. This court finds no violation of Johnson's constitutional rights in the occurrence. The jury was instructed clearly to disregard the series of questions. This was an issue for appeal, and it was considered on appeal.

Petitioner's constitutional rights have been in no way violated. It follows that his application for the writ of habeas corpus will be denied. The clerk will notify counsel to draft and submit judgment accordingly.