**UNITED STATES of America ex rel. Charles F. KELLEY**

v.

**A. T. RUNDLE, Warden, etc.**

**Misc. No. 2777.**

United States District Court
E. D. Pennsylvania.

May 4, 1965.

**HIGGINBOTHAM, District Judge.**

Relator, Charles F. Kelley,[1] now serving three and one-half to seven years for larceny by trick and fraudulent conversion [2] brings this habeas corpus petition alleging on several grounds [3] the invalidity of his convictions.[4] Relator's first and principal contention is that "[t]he effect of the Trial Judge's refusal to grant a continuance was to deny relator effective assistance of counsel in violation of his right to due process under the Fourteenth Amendment * *"[5] Relator alleges as a second ground that the conviction on Bill No. 762 is invalid because the date on the indictment as amended offended the statute of limitations. This second allegation establishes no basis for relief unless the Court finds, as Relator's brief properly recognizes, "that had counsel for defendant been given more time to prepare his case, this bar to the indictment would have been properly placed before the trial court." [6] I have concluded that Relator's proof falls short of the constitutional standards which would require the Court to issue a writ.

**I.**

█ A continuous line of decisions beginning in 1932 with Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, has given expanding sub-

Thomas F. Gilson, Philadelphia, Pa., for petitioner.

Gordon Gelfond, Joseph M. Smith, David L. Creskoff, Asst. Dist. Attys., Philadelphia, Pa., for respondent.

1. Kelley was born Mack Banks, Trial, N. T., p. 77.

2. Kelley was convicted on December 7, 1961, on Bill Nos. 762 and 763 charging him with fraudulently inducing two women to give him $9,500.

3. In his original petition filed without aid of counsel, Relator raised a fusillade of objections to his convictions, namely, that the Commonwealth of Pennsylvania lacked jurisdiction, that trial counsel was "unethical and incompetent," that two of the Commonwealth's witnesses were incompetent to testify, that the Court did not allow the credibility of these witnesses to be attacked, that Relator's conviction is the result of an extortion conspiracy perpetrated by the police, that Relator was not given sufficient time to prepare a defense or to call witnesses, and that the indictment was defective.

However, the evidence put on by Relator at the habeas corpus hearing with the aid of court-appointed counsel discusses only the latter two points. Since I have found the several points originally raised by Relator to be either without evidence to support them, or legally insufficient, this opinion will deal only with the two issues briefed by court-appointed counsel.

4. Relator has exhausted his remedies in the state courts. See testimony of Gordon Gelfond, Esquire, Assistant District Attorney—habeas corpus hearing, January 25, 1965, p. 64.

5. Relator's Brief in Support of Writ of Habeas Corpus, p. 1.

6. Id. at p. 6.
   Although I have chosen herein to discuss the merits of the statute of limita-

stance [7] to the right of an accused "to have the Assistance of Counsel for his defense." [8] A defendant in a criminal proceeding is entitled to aid which has variously been prescribed as effective,[9] competent,[10] adequate,[11] and able.[12] A defendant is denied due process when he is denied effective assistance of counsel. Powell v. State of Alabama, supra; House v. Mayo, 324 U.S. 42, 46, 65 S.Ct. 517, 521, 89 L.Ed. 739 (1945); Hawk v. Olson, 326 U.S. 271, 274, 66 S.Ct. 116, 118, 90 L.Ed. 61 (1945); cf. White v. Ragen, 324 U.S. 760, 764, 65 S.Ct. 978, 980, 89 L.Ed. 1348 (1945).[13]

But Relator's petition here turns not on an alleged intrinsic deficiency of counsel,[14] but rather on the contention that an error of the Court in refusing to grant a continuance rendered counsel's aid ineffective. Prejudice resulted, Relator claims, because his case was a complicated one requiring more time for preparation.[15] In his brief he alleges that more time would have been beneficial in allowing an opportunity to uncover an alibi and to investigate the credibility of the prosecuting witnesses.

In Avery v. State of Alabama, 308 U.S. 444, 60 S.Ct. 321 (1940), as here, petitioner had been provided with [16] professionally competent attorneys at trial, and the only question for decision was whether the right to the assistance of counsel had been infringed by the denial of a continuance. In affirming the

---

tions issue, I do so to give Relator every benefit of doubt in his contention that he was not competently represented. Absent an argument of competency, there would be no question of the applicability of the normal rule that "the sufficiency of an indictment cannot be received in habeas corpus proceedings." Ex parte Watkins, 3 Pet. 193, 28 U.S. 193, 7 L.Ed. 650 (1829). See also: In re Eckart, 166 U.S. 481, 17 S.Ct. 638, 41 L.Ed. 1085 (1896); Howard v. Fleming, 191 U.S. 126, 24 S. Ct. 49, 48 L.Ed. 121 (1903); Goto v. Lane, 265 U.S. 393, 44 S.Ct. 525, 68 L. Ed. 1070 (1923); Application of Boyer, D.C., 226 F.Supp. 888, aff'd 328 F.2d 620 (3rd Cir. 1963), cert. den. 377 U.S. 937, 84 S.Ct. 1342, 12 L.Ed.2d 300; United States ex rel. Potts v. Rabb, D.C., 53 F. Supp. 79, appeal dismissed 141 F.2d 45 (3rd Cir. 1943).

7. For a particularly thorough and up-to-date discussion of the right to be effectively represented by counsel, see Waltz, Inadequacy of Trial Defense Representation as a Ground for Post-Conviction Relief in Criminal Cases, 59 N.W.U.L. Rev. 289 (1964).

8. These Sixth Amendment guarantees have been incorporated into the Fourteenth Amendment due process guarantees. See the discussion of the supporting precedents in Gideon v. Wainwright, 372 U.S. 335, 340–345, 83 S.Ct. 792, 794–797, 9 L. Ed.2d 799 (1963).

9. Powell v. State of Alabama, 287 U.S. 45, 71, 53 S.Ct. 55, 65 (1932); United States v. Bergamo, 154 F.2d 31 (3rd Cir. 1964); United States v. Vasilick, 206 F.Supp. 195 (M.D.Pa.1962).

10. Avery v. State of Ala., 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940).

11. United States v. Johnston, 318 F.2d 288, 291 (6th Cir. 1963); Goforth v. United States, 314 F.2d 868, 871 (10th Cir. 1963); Stickney v. Ellis, 286 F.2d 755, 757 (5th Cir.), cert. den. 365 U.S. 888, 81 S.Ct. 1041, 6 L.Ed.2d 198 (1961); United States v. Wight, 176 F.2d 376, 378 (2nd Cir. 1949).

12. Reynolds v. Cochran, 365 U.S. 525, 81 S.Ct. 723, 727, 5 L.Ed.2d 754 (1961).

13. The Pennsylvania cases are substantially in agreement with the Federal view. See Commonwealth v. O'Brien, 312 Pa. 543, 546, 168 A. 244, 245 (1933); Commonwealth v. Jodlowsky, 163 Pa.Super. 284, 286, 60 A.2d 836, 837 (1948); Commonwealth v. Balles, 160 Pa.Super. 148, 154, 50 A.2d 729, 732 (1947).

14. Relator admits his trial counsel's general competence in his brief, pointing out that "relator's counsel was experienced and able and performed in the best traditions of the bar * * *" Relator's Brief, p. 3.

15. The Assistant District Attorney agreed that the case was "quite involved" but explicitly refused to join in the application for a continuance when the Court inquired if this was his intention.

16. I am aware that there is substantial disagreement even within this Circuit as to whether a relator has a higher burden of proof in establishing incompetence where the counsel is of his own choosing. See United States ex rel. Darcy v. Handy, 203 F.2d 407, 417, 425–428 (3rd Cir.

conviction, Justice Black said that the denial of a continuance, "standing alone * * * does not constitute a denial of the constitutional right to assistance of counsel." 308 U.S. 444, 446, 60 S.Ct. 321, 322. Avery makes it clear that a request for a continuance "must be decided in the light of facts then presented and conditions then existing." [17] Id. 60 S. Ct. at 322. Thus Avery with its close analysis of the peculiar facts of the given situation provides the model for judicial review of a claim of constitutional infringement through the failure to grant a continuance.

## II.

Turning then to the facts in the instant petition, I can find no abuse of judicial discretion which rises to the level of a constitutional deprivation.[18] Trial counsel did request a continuance after informing the court that he had spoken with his client ten to fifteen minutes. However, counsel had not come cold into Kelley's case. He had spoken with an attorney, Gold, from New York who had contacted him to represent Kelly, and as a result, "I had a fairly good picture because of what Mr. Gold told me in our telephone conversations from New York and the conversation that I had with Mr. Kelley * * *" [19] Moreover, there was an hour and a half luncheon recess during which Kelley's trial was continued. Although Kelley testified that his trial counsel asked him "just one question,"[20] counsel testified that he interrogated

Kelley for "quite a long time," [21] and that "[d]uring that luncheon period * * * I had a good opportunity to speak to Mr. Banks [Kelley] and tried to learn as much about him as I could." [22] Counsel indicated at the habeas corpus hearing that this luncheon recess was pivotal to his preparation:

"Q. Do you feel that you had enough time to adequately prepare the defense?

"A. Well, if I had only spoken to the man in the morning before we went to trial I would definitely say no, but the long recess gave me an adequate opportunity to talk to Mr. Banks and to find out a little more about him.[23]

In contrast to Relator's testimony, I have found totally credible the testimony of his trial counsel, Samuel Gorson, Esquire, as to this point as well as to the other points in issue.

The other major purpose a continuance might have served was to have allowed time to search out witnesses for Kelley. But trial counsel testified at the habeas corpus hearing: "Well, Mr. Banks [Kelley] told me he had no defense witnesses. I asked him that." [24] Even as late as the habeas corpus hearing, Kelley had produced no evidence of witnesses who might have helped at his trial.

Trial counsel's handling of the indictment on Bill No. 762 was also alleged by Relator to be the result of inadequate

---

1953); In re Ernst's Petition, 294 F.2d 556, 558 (3rd Cir. 1961). However, in making the findings herein, I have given the relator every benefit of doubt and have applied the alleged more rigid standard and higher degree of competency which is sometimes required of court-appointed counsel, pursuant to the Fourteenth Amendment.

17. Significantly, Avery v. State of Alabama, supra, was a case at least as complicated as Kelley's was. Petitioner had been found guilty of murder and sentenced to death.

18. Of course, some judges might have granted a continuance in Kelley's case,

but this does not render the denial of a continuance constitutional error. What we have here is a not unusual instance of judicial discretion which does not touch upon constitutional guarantees.

19. Habeas corpus hearing, January 25, 1965, N.T., p. 47.

20. Habeas corpus hearing, December 21, 1964, N.T., p. 21.

21. Continued habeas corpus hearing, Jan. 25, 1965, N.T., p. 48.

22. Id. at 52–53.

23. Id. at p. 52.

24. Id. at p. 50.

time for preparation.[25] In the course of the trial, the District Attorney amended the date of the indictment on Bill No. 762 from July 30 to July 1, 1958, in order to conform to the testimony received at trial.[26] The indictment had been returned on July 22, 1960. With a two-year statute of limitations, the date of the offense was now amended to a time prior to two years before the return of the indictment. Whether under proper challenge the indictment thereby became defective under Pennsylvania law is not an issue which is related to an allegation of prejudice caused by the denial of a continuance. Under the circumstances surrounding the amendment, the best prepared lawyer might well have been in no better position than Kelley's trial counsel was. The District Attorney amended the indictment only after the first witness, Mary Ann Shelley, had testified well after the trial had begun. Even if Miss Shelley and any other prosecution witnesses had been interviewed by defense counsel prior to trial, and even if they had revealed that the date of the offense was July 1st as later amended, a defense lawyer thus well prepared would have had to do substantially what Relator's trial counsel did—make an on-the-spot decision based on developments at trial when the attempt to amend the indictment was made.

But even if counsel made an error reflecting on his proficiency in not objecting to the amendment of the indictment, Relator is not entitled to relief on that ground. Certainly most counsel recognize that in Pennsylvania the statute of limitations can be tolled for several reasons as applied to non-residents. 19 P.S. § 211. Relator was a non-resident.[27] I cannot conclude that the failure to object, when there are so many reasons to indicate that the objection might be futile, rises to the constitution-al dimensions of incompetence of counsel. Assuming counsel's error, it still would not offend the standard adopted in this Circuit in In re Ernst's Petition, 294 F.2d 556, 558 (3rd Cir. 1961). When a "[p]etitioner * * * criticizes * * * actions and omissions of defense counsel at the trial," Judge Hastie wrote:

> We approach the problem as did the Court of Appeals for the District of Columbia when it said: "[A]bsence of effective representation of counsel * * * must mean representation so lacking in competence that it becomes the duty of the court or the prosecution to observe it and to correct it." Diggs v. Welch, 1945, 80 U.S.App.D.C. 5, 148 F.2d 667, 670.

Whatever degree of incompetence might be required to raise a constitutional question,[28] trial counsel's failure to object to the amendment to the indictment does not constitute an error of the stark proportions envisioned in Ernst.

Finally, Relator's counsel at trial concluded a week later after reviewing the record that he should withdraw his motion for a new trial.[29] I cannot say from the trial record that that decision was incompetent or malicious in light of the facts discussed herein. Withdrawal of a motion for a new trial, like the decision not to take an appeal may be grounded on many diverse considerations and is not evidence of incompetence. Cf. Riddle v. McLeod, Warden, 240 F.2d 206, 207 (10th Cir. 1957).

Indeed, if Relator received less effective legal aid than he desired, he cannot now lay the blame entirely with his trial counsel. The record at trial and at the habeas corpus hearing reveals a recalcitrant client who hindered his trial counsel's efforts during what time there was. Kelley was evasive ("I couldn't get any

25. Relator's Brief, p. 6.

26. Trial, N.T., p. 41.

27. By his own admission, Kelley was a resident of New York at a time period that would have tolled the statute of lim-itations. See habeas corpus hearing, December 21, 1964, p. 13.

28. See Judge Biggs' opinion in United States ex rel. Darcy v. Handy, 203 F.2d 407, 417 (3rd Cir. 1953).

29. Trial, N.T., p. 84.

specific answers out of him" [30]) and gave little weight to counsel's advice. Kelley's response to an experienced attorney's suggestions as to strategy are particularly revealing in this regard. At the habeas corpus hearing, Kelley's trial counsel testified:

> "I couldn't understand why he didn't want to take the stand in his own defense. I couldn't understand why he would waive a jury trial. To the best of my knowledge I urged him to take the stand, and he refused to do so." [31]

Even though he did not have the most cooperative client, trial counsel performed vigorously in Kelley's behalf. Moreover, counsel had had extensive experience, having come to the bar in "1929 or 1930," and he had an unusual record of experience in the criminal field.[32] He raised a creative defense by alleging that the I.O.U.'s introduced by the prosecutor indicated that this was a civil and not a criminal matter. His cross-examination of the two prosecuting witnesses and objections to their testimony were apt and spirited.[33]

Trial counsel's own frank evaluation of the effect of time on his preparation of the case is believable in light of the record:

> "Q. Do you know or did you feel that at any time your presentation of the case was hampered by the lack of time?
>
> "A. Well, I have to be a little noncommittal on that. Naturally every lawyer feels if he had more time he could do a better

job. It is not pleasant to come into court and interview a prospective client, or a client, and then go on to trial with 20 minutes' preparation. Obviously I wasn't too happy about that, but after having spoken to Mr. Banks [Kelley] during the recess at great length I didn't feel that there was very much I could do for him. Subsequently, I saw him at Moyamensing I think on one or two occasions." [34]

Relator's petition does not raise the serious questions of adequate representation flowing from the denial of a continuance found in those cases where relief has been granted. No irresponsible appointment of counsel has been made; [35] counsel did not refuse to ask for a continuance so he could consult with his client.[36] This is not a case tried after one minute of preparation [37] or one in which an accused has been forced to proceed with counsel not of his choice without a continuance.[38] In short, Relator has not met the substantial burden required of a petitioner for habeas corpus of showing that he has suffered a constitutional deprivation.

Relator's petition must therefore be denied.

The Court wishes to take special note of the capable assistance rendered by court-appointed counsel, Thomas F. Gilson, Esquire, in this matter. Indeed, Relator has communicated to me his appreciation for the "commendable effort" of Mr. Gilson.[39]

---

30. Habeas corpus hearing, January 25, 1965, N.T., p. 54.

31. Id. at 54–55.

32. Trial counsel testified: "* * * I guess I must have tried, I don't know how many hundreds of criminal cases of all kinds." Id. at 56–57.

33. For example, see Trial Transcript, pp. 30, 72–73, 76–77.

34. Habeas corpus hearing, January 25, 1965, N.T. p. 54.

35. Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55 (1932).

36. Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116 (1945).

37. United States v. Helwig, 159 F.2d 616 (3rd Cir. 1947).

38. United States v. Bergamo, 154 F.2d 31 (3rd Cir. 1946).

39. In a letter dated March 23, 1965, Relator wrote the Court: "Yesterday I received a copy of the brief filed by Mr. Gilson. It exceeded my expectations and I have a letter in the mail thanking him for what to me is a commendable effort. Win – lose or draw – it is o.k."