Cass WILLIAMS, Appellant,

v.

The STATE of Texas, Appellee.

No. 54730.

Court of Criminal Appeals of Texas,
Panel No. 1.

June 21, 1978.

Tom Crum, Waxahachie, for appellant.

Gene Knize, County Atty., Waxahachie,
for the State.

Before DOUGLAS, PHILLIPS and W. C.
DAVIS, JJ.

## OPINION

PHILLIPS, Judge.

This is an appeal from a conviction for
the offense of attempted murder. V.T.
C.A., Penal Code, Sections 15.01(a) and 19.-
02(a)(1). Punishment was assessed at seven
years, probated.

It was established at trial that on April
16, 1976, at 10:30 p. m., the appellant, Tom-
my Busby, C. J. Powell, Willie Lester, Clar-
ence Cook, and Eloise Williams were visit-
ing at Jimmy Freeman's residence on Pre-
ston Street. Eloise Williams, the appel-
lant's sister-in-law, testified that they were
talking and drinking coffee. During the
conversation, Tommy Busby went to the
restroom. Witness Williams then asked
Clarence Cook, whose nickname was "Baby
Jay," to go to the kitchen and get her
another cup of coffee. Cook took her cof-
fee cup and started walking towards the
kitchen. The appellant stood up and pulled

a gun out of his pocket. Williams said, "Run, Baby Jay. He is going to shoot you." Cook ran toward the back door, Busby stepped out of the restroom, and the appellant fired, striking Busby. Busby fell to the floor. The appellant stepped over Busby and went out the back door following Cook.

Williams' testimony was corroborated by Willie Lester, Jerry Freeman, Clarence Cook, and Tommy Busby. All of these witnesses testified that there had been no drinking of alcoholic beverages nor any arguments or fights prior to the shooting.

Jerry Young testified that he arrived at Freeman's residence at approximately 10:10 p. m. Young saw Earle Rowden and they both went outside to the backyard. At approximately 10:30 they heard a shot in the house and saw Clarence Cook run out the back door and around the side of the house. Young and Rowden started towards the door. The appellant came out of the back door and fired two shots. After each shot was fired, Rowden stated, "Cass, you shot me, man." Young ran for cover and crouched behind a parked car. Young then told appellant who he was and the appellant fired one shot at him. The appellant ran down Preston Street towards Clay Street.

Claude Freeman testified that on April 16, 1976, at approximately 11:00 p. m., the appellant came to his house on Clay Street and asked Freeman to keep a gun for the appellant without telling anyone. When Freeman refused, the appellant left. Freeman stated that on June 14 he had called a serviceman to repair his washing machine, which was out on his back porch. The serviceman found a gun under the washing machine.

The appellant testified in his own behalf that he had purchased a gun similar to that introduced into evidence over one year before. At that time, the gun had six cartridges in it and six extra cartridges. On April 16, he spoke to several young men who told appellant where he could buy some more cartridges for his gun. The appellant stated he intended to buy more cartridges in order to shoot snakes when he went fishing. The appellant carried the gun with him in order to match the cartridges because he did not know if the gun was a .22 or .25 caliber.

The appellant testified that he had "quite a bit" to drink before going to Freeman's house. He continued to drink whiskey and beer after his arrival. The appellant related he did not recall ever taking the gun out of his pocket nor firing the gun. He stated, "I just got on one of those running sprees and had too much to drink. I don't know what happened." The appellant explained that he would not have intentionally shot at Busby or Rowden had he been aware of what was happening and stated he considered Rowden his closest friend. He did not learn of the shootings until he voluntarily went to the police station.

In rebuttal, Officer Andrew Mendoza testified that he saw the appellant at the police station between 11:00 and 11:30 p. m. In Officer Mendoza's opinion, the appellant was not intoxicated at that time. Mendoza stated, in his earlier investigation of the shooting that evening, he had not seen any alcoholic beverages in Freeman's house and none of the witnesses he spoke with appeared intoxicated.

◼ In his Grounds of Error 1, 2, and 5, the appellant contends that the evidence was insufficient to show the appellant knowingly or intentionally attempted to kill Tommy Busby and the trial court erred in charging the jury on the law of transferred intent. The appellant points out that the doctrine of transferred intent and the doctrine of felony murder were found in Articles 42 through 44, V.A.P.C. (1925). Those articles of our former penal code are now codified in .V.T.C.A., Penal Code, § 6.04. The appellant also points out that Article 1256, V.A.P.C. (1925), our former murder statute, is now codified in V.T.C.A., Penal Code, § 19.02.[1] The appellant contends that

1. V.T.C.A., Penal Code, § 19.02 provides:

"(a) A person commits an offense if he:

(1) intentionally or knowingly causes the death of an individual;

since § 19.02 now sets forth three separate and distinct situations in which the offense of murder can be committed, such codification altered the application of the transferred intent doctrine and the felony murder doctrine. Specifically, appellant argues that § 19.02(a)(2) and (3) contain the law applicable to a situation involving either the transferred intent or felony murder doctrine. The appellant concludes that since the State elected to indict appellant under V.T.C.A., Penal Code, § 19.02(a)(1), it cannot avail itself of the felony murder or transferred intent doctrines in order to obtain a conviction. Therefore, the appellant asserts that since § 6.04 does not apply to 19.02(a)(1), the evidence was insufficient to show intent. We find appellant's contention without merit. Section 6.04 provides:

"(a) A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

(b) A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that:

(1) a different offense was committed; or

(2) *a different person or property was injured, harmed, or otherwise affected.*" (Emphasis added)

We note that transferred intent, now codified in § 6.04(b)(2), was traditionally applied to our murder statute under our former penal code, Article 1256, supra. See *Hayes v. State,* 171 Tex.Cr.R. 646, 353 S.W.2d 25; *Richard v. State,* Tex.Cr.App., 426 S.W.2d 951; *Sargent v. State,* Tex.Cr.App., 518 S.W.2d 807. We reject appellant's contention that, by providing three separate situa-

tions in which murder is committed under § 19.02(a)(1), (2), and (3) the Legislature intended that § 6.04 would only apply to 19.02(a)(2) and (3) and would not apply to 19.02(a)(1). Contrary to appellant's contention, it clearly appears that the Legislature intended Title 2, § 6.04 to apply to 19.-02(a)(1). See V.T.C.A., Penal Code, § 1.02; Article 5429b–2, V.A.C.S.; *Blansett v. State,* Tex.Cr.App., 556 S.W.2d 322; *Martinez v. State,* Tex.Cr.App., 533 S.W.2d 20; *Dockery v. State,* Tex.Cr.App., 542 S.W.2d 644; *Braxton v. State,* Tex.Cr.App., 528 S.W.2d 844. We conclude that the trial court did not err in charging the jury on the law under V.T.C.A., Penal Code, § 6.04(b)(2) and overrule appellant's fifth ground of error.

■ Accordingly, we must now determine if the evidence is sufficient to show the appellant intentionally or knowingly attempted to cause the death of Tommy Busby in light of the application of 6.04(b)(2). When determining the sufficiency of the evidence, the evidence must be viewed in the light most favorable to the jury verdict. *Murray v. State,* Tex.Cr.App., 505 S.W.2d 589.

■ In the instant case, Eloise Williams testified that the appellant fired a pistol at Clarence Cook, striking Tommy Busby. A pistol is a deadly weapon per se, and when used by a defendant an intent to kill is presumed. *Jackson v. State,* Tex.Cr.App., 548 S.W.2d 685; *Fentis v. State,* Tex.Cr.App., 528 S.W.2d 590; *Thompson v. State,* Tex.Cr.App., 521 S.W.2d 621. This presumption coupled with the testimony of Williams and the application of § 6.04(b)(2) clearly supports the jury verdict. *Valore v. State,* Tex.Cr.App., 545 S.W.2d 477; see also *Johnigan v. State,* Tex.Cr.App., 502 S.W.2d 136. We conclude the evidence is sufficient to support the conviction and overrule appellant's first two contentions.

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or

(3) commits or attempts to commit a felony, other than voluntary or involuntary manslaughter, and in the course of and in further-

ance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

(b) An offense under this section is a felony of the first degree."

**510**

In his third ground of error, the appellant contends that the trial court erred in failing to charge the jury on circumstantial evidence since there was no direct evidence of appellant's intent. In the instant case, it was established that the appellant fired a pistol, striking Tommy Busby. The appellant testified that he would not have intentionally killed Busby had he been aware of what happened. Thus, only the question of intent was left to be inferred from the circumstances. It is well established that an instruction as to circumstantial evidence is not required where the main fact is proved by direct testimony and only the question of the defendant's intent is to be inferred from the circumstances. *Littleton v. State*, Tex.Cr.App., 419 S.W.2d 355; *Helms v. State*, Tex.Cr.App., 493 S.W.2d 227; *Chappell v. State*, Tex.Cr.App., 519 S.W.2d 453; *Ross v. State*, Tex.Cr.App., 504 S.W.2d 862. Appellant's contention is overruled.

In his fourth ground of error, the appellant contends that the trial court erred in charging the jury on intoxication at the guilt and innocence phase of the trial. The appellant argues that an instruction as to the intoxication of a defendant is only proper at the punishment phase of the trial and that giving such charge to the jury at the guilt and innocence stage is reversible error. We find appellant's contention without merit. The charge given properly instructed the jury as to the law in accordance with V.T.C.A., Penal Code, § 8.04. No reversible error is shown. *McElroy v. State*, Tex.Cr.App., 528 S.W.2d 831; see also *Ramos v. State*, 141 Tex.Cr.R. 126, 147 S.W.2d 809; *Kincheloe v. State*, 146 Tex. Cr.R. 414, 175 S.W.2d 593. Appellant's contention is overruled.

The judgment is affirmed.