James A. **BAGSBY**, Appellant,

v.

The **STATE** of Texas, State.

No. 2–85–102–CR.

Court of Appeals of Texas,
Fort Worth.

Dec. 3, 1986.

Louis E. Sturns, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., and David K. Chapman, Asst. Crim. Dist. Atty., Fort Worth, for appellee.

Before FENDER, C.J., and HOPKINS and FARRIS, JJ.

## OPINION

HOPKINS, Justice.

Appellant, James A. Bagsby, was convicted by a jury of theft of money valued over $200.00 but less than $750.00. The court sentenced him to 30 days confinement in the county jail, probated for one year, and a $300.00 fine. *See* TEX.PENAL CODE ANN. sec. 31.03(e)(3) (Vernon Supp. 1986). Bagsby alleges error in the court's: refusal to quash the information; instruc-

tions to the jury relative to the law of transferred intent; and instructions regarding presumption of intent to deprive the owner of property.

The judgment is affirmed.

Bagsby, as lessee and operator of the Luxton Nursing Center, issued a payroll check on February 20, 1984 in the amount of $238.46 to Pete Loyd, an employee. Loyd cashed the check that same day at Strick's Grocery, receiving cash from an employee, Elmer Miller. The drawer bank dishonored the check twice because of insufficient funds. When the bank returned the check the second time, Dale O'Neal, an employee of Strick's, gave written notice of dishonor by certified mail addressed to James Bagley at the Luxton Nursing Center. Failing to receive payment of the amount of the check, Strick's delivered the check to the District Attorney's Office.

The parties stipulate that the Pete Loyd check and another similar check payable to Floyd Phillips were received by the District Attorney on March 28, 1984 and that restitution on the checks was made on April 16, 1984. However, on April 12, 1984, a complaint and information had been formally filed against appellant charging him with theft from Elmer Miller, the Strick's employee who cashed the check.

By his first point of error, appellant claims that the information upon which prosecution was brought is not supported by a valid complaint and that his motion to quash the information should have been granted because the evidence adduced upon the hearing showed that the complaint was not verified as required by TEX.CODE CRIM.PROC.ANN. art. 21.22 (Vernon 1966). The statute provides:

> No information shall be presented until affidavit has been made by some credible person charging the defendant with an offense. The affidavit shall be filed with the information. It may be sworn to before the district or county attorney who, for that purpose, shall have power to administer the oath, or it may be made before any officer authorized by law to administer oaths.

*Id.*

Gordy Lynn Brown signed the complaint. He was an investigator for the District Attorney's Office in the check fraud division and had the authority to decide whether a case would be filed. Brown testified that from thirty to seventy-five check cases were filed each month. He did not recall if he signed the complaint in question in the presence of an assistant district attorney. He stated that it was common practice to sign the document and send it or carry it down the hall to the attorney's office. He was unable to state that anyone had administered the oath to him prior to his signing the complaint because sometimes the assistant district attorney was present and sometimes he was not. The general rule was to sign the document, hand it to the attorney, raise the hand, and say, "I swear". The same procedure was ordinarily used in cases where there were a number of documents. Brown also testified that he felt he was under oath because he had taken a law enforcement officer's oath generally to uphold the law. He was not certain if that oath was "different from taking an oath to sign a legal instrument," and finally that he did not "know the specifics of what that oath is". The testimony is summarized in the following excerpt from the record:

> Q And the way it happened even when it was done right was you signed a bunch of papers and then you took them over to the DA and then you raised your hand and said I swear?
>
> A I swore to the truthfulness of my statement.
>
> Q After the fact.
>
> A That's true.
>
> Q And only in some cases.
>
> A I would say in the majority of the cases.

■ Appellant recognizes that the burden of proof rests with him upon a motion to quash alleging that the complaint was not properly sworn to. *See Wheat v. State*, 537 S.W.2d 20 (Tex.Crim.App.1976).

Appellant states that *Simpson v. State*, 172 Tex.Cr.R. 264, 356 S.W.2d 146 (1962) holds that the oath must be taken *before* the complaint is signed. Such is not the case. On the contrary, the procedure followed and approved of in *Simpson* entails the affiant presenting the signed complaint to the clerk followed by his being sworn, after which the clerk's name is affixed thereto. Appellant also states in his brief that "in *Colbert v. State*, 166 Tex.Cr.R. 431, 314 S.W.2d 602 (1958) it was held that a complaint would not support an information where a Sheriff, the complainant, had not been sworn either prior to or at the time of signing the complaint". We are not misled by the inadvertent or deliberate failure to fully summarize the *Colbert* evidence. In *Colbert:* "Sheriff Elmer Clark ... testified that he signed the complaint but that he was not sworn either prior to, at the time of *or after signing the same* ". *Id.* at 603 (emphasis ours). We hold that appellant has not met his burden of proof to show the invalidity of the complaint. Point of error one is overruled.

Appellant contends, in his second, third and fourth points of error, that the trial court erred in instructing the jury on the law of transferred intent, and having given such instruction, in failing to apply that law to the facts in the case. The applicable law is contained in TEX.PENAL CODE ANN. sec. 6.04 (Vernon 1974):

(a) A person is criminally responsible if the result would not have occurred but for his conduct.

(b) A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that:

(1) a different offense was committed; or

(2) a different person or *property* was injured, harmed, or *otherwise affected.*

*Id.* (emphasis added). This language appeared in the jury instructions, Paragraph V.

Appellant urges that the doctrine of transferred intent expressed in subsection (b) above applies only to homicide, assault and conspiracy cases, but does not apply to theft cases. Appellant refers to a number of cases where courts applied the doctrine in murder and assault prosecutions.

We note that subsection (b) expresses two different forms of transferred intent. First (b)(1) codifies the use of transferred intent between crimes. For example, if A intends to commit assault against B and instead kills him, then the doctrine of transferred intent will operate under (b)(1) to create liability because "a different offense was committed" than that contemplated. Likewise, (b)(2) codifies the use of transferred intent between parties. For example, if A intends to shoot B but instead shoots C, then A's intent is transferred between parties from B to C.

The situation presented by this appeal involves both kinds of transferred intent. First, Bagsby wrote a worthless check to his employee. This is a criminal offense under TEX.PENAL CODE ANN. sec. 32.41 (Vernon Supp.1974). The check was passed to a third party and facilitated the theft of property from the third party. Intent was transferred from crime to crime (worthless check to theft) and from person to person (employee to third party). This conviction involves the use of transferred intent under both (b)(1) and (b)(2).

■ We reject appellant's contention that the doctrine of transferred intent is limited to assault, conspiracy and murder cases, and does not apply to property crimes. By its very language, the statute applies where a "different ... property was ... otherwise affected". *See* TEX.PENAL CODE ANN. sec. 6.04. This language is sufficiently broad to encompass the situation where Bagsby's original or contemplated offense was issuance of the worthless check, but resulted in a loss of property (money) by Strick's when they honored the check. Appellant's second point of error is overruled.

■ Appellant next declares that the State, having relied on the theory of trans-

ferred intent, should have pled such theory in its information.. No authority is cited for such a novel contention and it must be rejected. Point of error three is overruled.

■ The final error claimed with regard to the instruction on transferred intent is that the law set out therein should have been applied to the facts in the case in an appropriate charge. Because there was no trial objection on this ground, any error in this regard must be viewed in the light of the holding in *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984). This court must assay the actual degree of harm in the light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relative information revealed by the record of the trial as a whole. *Id.* at 174.

The Court of Criminal Appeals in *Garrett v. State*, 642 S.W.2d 779 (Tex.Crim. App.1982), squarely held that where the jury charge properly recites the law relating to transferred intent but fails to apply that law to the facts, such failure is not fundamental error. Appellant's fourth point of error is overruled.

■ In his fifth point of error appellant asserts that, because there was no allegation of a presumption in the information, the trial court erred in instructing the jury that it could infer that the appellant had the intent to deprive the owner of property.

The Texas Penal Code states that the actor is presumed to have the intent to deprive the owner of property in a theft by check case if: (1) payment was refused by the bank or other drawee for lack of funds or insufficient funds; (2) on presentation within 30 days after issue; and (3) the issuer failed to pay the holder in full within 10 days after receiving notice of that refusal. *See* TEX.PENAL CODE ANN. sec. 31.06(a)(2) (Vernon 1986).

Appellant made no objection to the charge, therefore reversal will result only if the error was fundamental. *See Almanza*, 686 S.W.2d at 171. We find no fundamental error. An information is sufficient if it alleges the elements of an offense.

TEX.CODE CRIM.PROC.ANN. art. 21.03, 21.23 (Vernon 1966). An element of an offense is the forbidden conduct, the required culpability, the required result, or the negation of any exception to the offense. TEX.PENAL CODE ANN. sec. 1.07(a)(13) (Vernon 1974). A presumption is none of these but is instead a statutory statement permitting an inference to be drawn from the existence of certain facts. *See Easdon v. State*, 552 S.W.2d 153, 155 (Tex.Crim.App.1977). A presumption is, therefore, not an element of an offense but is instead a trial vehicle which may be used to prove an element of an offense. *See Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim.App.1985). The presumption, not being an element of an offense, need not be pled. Appellant's fifth point of error is overruled.

■ In his sixth point of error, appellant asserts that the trial court erred in charging the jury with the statutory presumption of "intent to deprive," because this portion of the charge is not supported by the evidence.

The elements of the presumption created by section 31.06 of the Penal Code have been set out above. It is undisputed that the check was issued and then dishonored by the bank within 30 days of issuance, the first two elements of the statutory presumption. Appellant challenges the evidence presented at trial supporting the third element stating that: (1) the return receipt was misaddressed; (2) the return receipt was not connected to a particular check; and (3) there was no direct testimony connecting any letters with the return receipt introduced into evidence.

Contrary to these assertions the record contains the testimony of Dale O'Neal, an employee of Strick's. He stated that he wrote a letter to the appellant regarding the check and to that letter he attached the green return receipt card entered into evidence. He testified entirely from his own personal knowledge. Likewise, an employee at the address where the letter was sent testified that the letter addressed to James Bag*ley* instead of James Bags*by* would be delivered to the appellant.

From this testimony we have sufficient evidence to support an instruction on the presumption. We therefore, overrule point of error six.

Appellant's final point asserts that there was insufficient evidence to sustain a conviction. We disagree. The elements of this offense are correctly stated in appellant's brief as: (1) in Tarrant County, Texas, on or about the 20th day of February, 1984; (2) the appellant did heretofore then and there intentionally; (3) appropriate property, to wit: money of the value of $200.00 or more, but less than $750.00; (4) from the owner, Elmer Miller; (5) without the effective consent of the owner; and (6) with the intent to deprive the owner of the property.

Appellant contends that there is insufficient evidence to, (1) show that he had the "intent to deprive" anyone of the property and (2) to show he intended specifically to deprive Elmer Miller. Appellant's first contention was settled under points of error five and six. The State proved intent pursuant to a statutory presumption. The second contention was decided under point of error two where application of the doctrine of transferred intent was held proper. Appellant's final point of error is overruled.

The judgment is affirmed.