**John Wiley PRICE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 0322–93.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 22, 1993.

Rehearing denied Sept. 22, 1993.

James D. McCarthy, Phyllis A. Jackson and Ronald L. Goranson, Dallas, for appellant.

John Vance, Dist. Atty., Sue Korioth, Asst. Dist. Atty., Dallas, and Robert Huttash, State's Atty., Austin, for the State.

*ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

Appellant's motion for rehearing on petition for discretionary review denied.

*DISSENT TO REFUSAL OF APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

CLINTON, Judge.

The offense alleged is "criminal mischief" under V.T.C.A. Penal Code, § 28.03(a)(1) and (b)(2), *viz:*

"... [Appellant] did unlawfully, knowingly and intentionally damage tangible personal property, to-wit: a motor vehicle, without the effective consent of Stephani Barnes, and the amount of pecuniary loss caused by said damage was more than $20.00 but less than $200.00[.]"

Trial was to a jury which found appellant "guilty as *charged in the information* of the offense of criminal mischief in an amount of $20.00 or more, but less than $200.00." Tr. 80.[1] The jury assessed punishment at a fine of $1,000.00 and confinement in the County Jail for 75 days. Tr. 82.

What thus appears to be a simple prosecution and straight forward conviction for "criminal mischief" is belied, however, by what the record reveals was a trial on a facile but flawed theory of "transferred intent."

I

A

Before the jury panel was seated in the courtroom appellant was arraigned on the information charging the offense of "criminal mischief" in Cause No. MB90–54983–G, and pleaded "not guilty." II S.F. 3–4. The trial judge then called for announcements in Cause No. MB90–34917–B, and both parties responding "ready," directed the prosecutor to read State's motion to proceed with adjudication of guilt in that cause, which motion is set out in the margin.[2] The court "arraigned" appellant on the motion, to which he

---

1. Appellant and others were engaged in *constitutionally protected picketing* across a driveway to an office building to protest what they perceived and alleged were *discriminatory employment practices by management of a local television station* located therein (as were other tenants). Having earlier attempted to impede ingress to other motorists, when Barnes drove her van onto the driveway and sought to move on through the picket line, appellant stood in front of her van, blocking the way; as she attempted to move forward, appellant stepped backward several feet, then leaned toward the windshield of the van, grabbed both wiper blades; the van "inched" forward and when appellant released the wipers they were bent, resulting in the damage alleged. *Price v. State* (Tex.App.—Dallas No. 05–91–00347–CR, 1992 WL 360170 delivered November 19, 1992); State's Reply to Appellant's PDR, at 3.

All emphasis here and throughout this opinion is mine unless otherwise indicated.

2. "Now comes the State of Texas ... and would show the court the following:

That John Wiley Price, hereinafter styled Defendant, was duly and legally placed on probation for a period of six months in the above-entitled and numbered cause in County Criminal Court No. 2, Dallas County, Texas, on the 14th day of September, A.D. 1990, for the offense of criminal mischief, a Class A misdemeanor, and said Defendant has violated condition No. 1 of said probation in that he committed an offense against the laws of the State of Texas in the following particulars:

pleaded "not true to both allegations." II S.F. 4–6.

That done, the court took up "the only remaining matter prior to the selection of the jury." Then with all preliminary matters settled the jury was selected, empaneled and sworn, and the prosecutor read the information, to which appellant pleaded "not guilty." II S.F. 14–15. Of course, *the motion to adjudicate guilt was not read to the jury* before State called its first witness. See II S.F. 15–16.

### B

That witness is a photographer for the television station, the target of the protesters; he had videotaped the demonstration, including the alleged incident at issue. Several other witnesses testified to the instant incident, some as well to similar incidents involving themselves or others. As the court of appeals would conclude:

"The jury was the sole judge of the witnesses' credibility. Appellant's acts, words, and deeds were sufficient to show: (1) appellant's knowledge of the events, and (2) that he was aware of consequences of his acts. These same acts, words, and

On or about December the 7th, 1990, in Dallas County, Texas, the said John Wiley Price did knowingly and intentionally damage tangible property, to-wit: a motor vehicle, without the effective consent of Stephani Barnes, the owner, in that there was no consent given, and the amount of the pecuniary loss caused by said damage was $20 or more, but less than $200, a Class B misdemeanor.

Further, on or about December 7, 1990, John Wiley Price did without legal privilege or authority knowingly and intentionally obstruct a place used for the passage of persons and vehicles, to-wit: a driveway located adjacent to Ivan Street near the intersection of Ivan Street and McKinnon Street in that John Wiley Price did intentionally and knowingly physically block with his person a Chevrolet van being driven by Stephani Barnes from traveling upon said driveway, a Class B misdemeanor. This violation event occurred after September 14, A.D. 1990, during the term of probation."

3. To quote the opinion of the court of appeals as to sufficiency of evidence is not to be taken as approval of its analysis and conclusions with respect to culpable mental states properly applicable in the premises.

deeds show appellant intended to commit the act charged."

*Price v. State,* supra, at 4.[3]

### C

Apparently at some point in time before the parties rested and closed on the first phase of trial, the trial judge submitted a proposed charge and appellant reacted by filing six specially requested charges, and at the charge conference by dictating and filing requested charges numbered 7 and 8, all more or less defensive in nature.[4]

Included in the proposed charge, to which appellant objected at length to no avail, and thus retained in the charge as given, were instructions on the theory of "transferred intent" based on the offense of "obstructing highway or other passageway" described in V.T.C.A. Penal Code, 42.03, and alleged in State's motion to adjudicate guilt in the prior cause, mentioned *ante,* at 1–2, n. 2. III S.F. 624–632, 634–635. They are at pages 3 and 11 of the court's charge, Tr. 67 and 76, and appended hereto.

### D

On direct appeal appellant presented, among others, two points of error asserting

4. Requested charge no. 1, on self defense, was denied because the judge believed the matter was adequately covered in court's charge. III S.F. 622.

Requested charge no. 2, on provoking the difficulty, was denied for essentially the same reason. *Id.,* at 622–623.

Requested charge no. 3, on justification, was denied because substantially given in court's charge. *Id.,* at 623.

Requested charge no. 4, limiting consideration of extraneous offenses, was denied because incorporated in court's charge. *Id.,* at 623.

Requested charge no. 5, on "voluntary conduct", denied because substantially incorporated in court's charge. *Id.,* at 624.

Requested charge No. 6, need to retreat before using nondeadly force, was denied. *Id.,* at 621

Requested charge no. 7, abstract defense provided by V.T.C.A. Penal Code, § 42.04, was denied by sustaining State's objection. *Id.,* at 634.

Requested charge no. 8, applying same defense to facts, denied by sustaining State's objection, *Ibid.*

the trial court erred in instructing the jury on the theory of transferred intent. The court of appeals examined his contentions, considered his arguments and overruled his points of error. *Price v. State*, supra, at 17–26.[5]

Appellant now complains, *inter alia*, that the court of appeals "erred in holding that the doctrine of transferred intent applies in the circumstances of this case." PDR, ground for review one, 4–10. The State responds that the "trial court properly charged the jury on the theory of transferred intent as authorized by Tex.Penal Code Ann. § 6.04(b)," essentially reciting generally prior applications of the theory in other cases and characterizing appellant's contention as "novel, without authority [and] argument or rationale to explain [why] § 6.04 is uniquely inapplicable to Appellant's offense;" it does not address the opinion of the court of appeals. State's Reply to PDR, at 8–10.

5. The court of appeals construed the application paragraph on page 11 of the court's charge, see appendix, to require the jury to find beyond a reasonable doubt that:

"(1) appellant obstructed a place used for the passage of persons and vehicles, *and* (2) he contemplated that damage would occur, *and* (3) he then damaged property."

*Price v. State*, supra, at 19 (emphasis in original). Based on referenced testimony, it opined that "there was sufficient evidence to warrant a charge on transferred intent." *Id.*, at 20.

The court of appeals approved the procedure of combining the trial on the information with a hearing on motion to adjudicate guilt; it did not agree that "a jury charge on transferred intent allows the jury to convict on a theory not alleged in the information," explaining:

"Transferred intent applies only to causation. Transferred intent is not a different manner or means of committing an offense. Although the information alleged criminal mischief, appellant was aware that the State intended to introduce evidence of the facts and circumstances surrounding the criminal mischief charge. If those facts and circumstances justified a transferred intent instruction, then the trial court was justified in submitting one. If the trial court submits a transferred intent instruction, it should also submit a paragraph applying the principle of transferred intent to the facts of the case.

A transferred intent instruction enlarges a defendant's criminal responsibility in much the same manner as does a 'parties' instruction. A transferred intent instruction no more amends the information than a 'parties' instruction amends an information."

In my judgment, we should grant appellant's motion for rehearing after PDR refused, and grant his petition for discretionary review to determine whether the legal reasons for the decision of the court of appeals comport with the concept of "transferred intent" the Legislature had in mind when enacting it. See Practice Commentary to § 6.04, as it relates to subsection (b). And, given that the court of appeals followed *Bagsby v. State*, 721 S.W.2d 567 (Tex.App.— Fort Worth 1986), no PDR, applying § 6.04(b) to "property crimes," we should take a look at it.

## II

### A

In this jurisdiction, prior to § 6.04(b) the doctrine of "transferred intent" was legislatively prescribed as follows:

*Id.*, at 23–24.

Finally, the court found the reasoning in *Bagsby v. State*, 721 S.W.2d 567, 570 (Tex.App.—Fort Worth 1986), no PDR, "compelling," that transferred intent does indeed apply to "property cases in general and to this case in particular," *viz:*

"... The very language of the statute allows transferred intent when 'different ... property ... was otherwise affected.' See Tex.Penal Code Ann. § 6.04 (Vernon 1974). The statutory language is sufficiently broad to encompass the situation where appellant intended to block the passage way and by doing so caused damage to a motor vehicle.

The application paragraph required the jury, before it could convict on the theory of transferred intent, to find that appellant:

1. without authority,
2. physically blocked complainant's vehicle,
3. and by physically blocking complainant's vehicle,
4. desired, risked, or contemplated that his acts would cause damage to complainant's vehicle.

The above language limits all application to foreseeable circumstances.

The record shows that appellant already had prevented others from entering the driveway before his encounter with complainant. Appellant's repeated confrontations with motorists were sufficient to show that he either desired, risked, or contemplated the natural consequences of his acts—to damage someone's motor vehicle."

*Id.*, at 25. Accordingly, it overruled both points of error. *Id.*, at 26.

"One intending to commit a felony and who in the act of preparing for or executing the same shall *through mistake or accident* do another act which, if voluntarily done, would be a felony, shall receive the punishment affixed to the felony actually committed." ·

Article 42, P.C. 1925; see also articles 43 and 44.[6] Thus the law transfers the *mens rea* of a contemplated but incomplete offense to the offense actually committed by mistake or accident; the rationale is that public policy demands that persons engaged in criminal activity not be exonerated "merely because they accidentally commit a different offense than originally contemplated." *Sargent v. State*, 518 S.W.2d 807, at 810 (Tex.Cr.App. 1975).[7]

Section 6.04(b) replaced article 42; it provides:

"(b) A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that:

(1) a different offense was committed; or

(2) a different person or property was injured, harmed, or otherwise affected."

Thus the general rationale still at work is that an initial germane culpable mental state to commit a certain offense may be transferred to the offense in fact committed.[8] Yet, we must determine continuing viability of the proposition that criminal responsibility rests in .an act done "through mistake or accident" resulting in "what actually occurred," and we should ponder the effect of a legislative prescription of alternative "results." [9]

---

6. The Court elaborated the doctrine in *Richard v. State*, 426 S.W.2d 951 (Tex.Cr.App.1968), *viz:*
"Appellant's conviction may be upheld under the doctrine of 'transferred intent,' which had its roots in the old common-law of trespass [and] was carried over to the United States in criminal cases in which poisoning, shooting, striking, or throwing a missile resulted in injury to the wrong person. In such cases, *not only is intent transferred* but also the degree of the crime and any defenses that would be valid if the intended .victim had been hit. [citation omitted]."
*Id.*, at 954–955. See, for example, the celebrated case of *Washburn v. State*, 167 Tex.Cr. 125, 318 S.W.2d 627 (1958):
"Applying that test [to determine corroboration of accomplice testimony], here, the conclusion is reached that the jury were authorized to conclude that appellant committed the murder of Helen Harris Weaver, by attaching a dynamite bomb to an automobile *with the intention of killing Harry Weaver and thru accident and mistake killed the deceased.*"
*Id.*, at 634–635.
Under article 42 the doctrine was not limited to transferring intent to a different victim; it also applied where in the course of committing an offense, by accident or mistake the actor commits another felony offense against the same victim. See, e.g., *Hillard v. State*, 513 S.W.2d 28, at 32–33 (Tex.Cr.App.1974).
Although annotated cases to article 42 and to § 6.04 decided before 1974 reflect the doctrine was mostly used in homicide and assault cases, articles 43 and 44 indicate it was also available in other kinds, both felony and misdemeanor.

7. See also (under former article 42), e.g.: *Hillard v. State*, 513 S.W.2d 28, at 32 (Tex.Cr.App.1974) (while committing offense of battering with in-

tent to injure a child, by *mistake* defendant caused her death); *Johnson v. State*, 169 Tex.Cr. 612, 336 S.W.2d 175, at 178, 179–180 (1960) (through a *mistake or accident* while preparing for or executing offense of sodomy, defendant killed victim).

8. It seems fairly clear that the "felony murder" aspect of article 42 is now covered by V.T.C.A. Penal Code, § 19.02(a)(3). *Ex parte Easter*, 615 S.W.2d 719, at 721 (Tex.Cr.App.1981); *Kuykendall v. State*, 609 S.W.2d 791, at 796 (Tex.Cr.App. 1981); but cf. *Aguirre v. State*, 732 S.W.2d 320, at 326 (Tex.Cr.App.1987); *McNeal v. State*, 600 S.W.2d 807, at 808 (Tex.Cr.App.1980); *Williams v. State*, 567 S.W.2d 507, at 508–509 (Tex.Cr. App.1978). See also the uneven treatment of interplay between § 6.04(b)(2) and § 19.02(a)(1) found in the several opinions in *Garrett v. State*, *viz:* 624 S.W.2d 953, at 956 (Tex.App.—San Antonio 1981); reversed and remanded, 642 S.W.2d 779 (Tex.Cr.App.1982); on remand, 656 S.W.2d 97, at 101–102 (Tex.App.—San Antonio); affirmed in part and reversed in part, 749 S.W.2d 784, at 788, 802–803 (Tex.Cr.App.1986, 1988).

9. The Texas Penal Code, A Proposed Revision, by the State Bar Committee on Revision of the Penal Code (Final Draft October 1970) ("Blue Book") elaborately dealt with the matter of causation in its proposed § 6.07, "Causation: Criminal Responsibility for Causing a Result." Blue Book, at 44–45.

Subsection (a) set out the "but for" test in context of the applicable statutory proscription:
"(a) Subject to the additional requirements in Subsections (b) and (c), an element of an offense requiring that an actor cause a result is

The first "result," subsection (b)(1), the commentators opine, "apparently was added out of an abundance of caution," because causal provisions in subsection (a) would ordinarily resolve the problem of criminal responsibility. Practice Commentary to § 6.04. However, in *Honea v. State*, 585 S.W.2d 681 (Tex.Cr.App.1979), recognizing that § 6.04 was derived from article 42, the Court stayed with the "well settled [rule] that one who, intending to commit a felony, *accidentally* commits another felony, is guilty of the felony actually committed," in that "[t]he intent to commit the *contemplated* felony transfers to the offense in fact committed." There because defendant clearly *intended to rob* the victim, who died as a result of likely suffocation from being bound gagged and placed face down on dusty barn floor during robbery, his acts resulted in *aggravated robbery* by causing serious bodily injury, (which by definition includes death). *Id.*, at 684–685.

As to the second "result," the commentary explains that subsection (b)(2) was derived from former "constructive malice statutes" so that, for a classic example, "if D shoots with intent to kill V, but misses and *unintentionally* kills W, he is nevertheless guilty of murder[.]" That example applies only to the "different person" result mentioned in subsection (b)(2).[10]

> established if the result would not have occurred as it did but for the actor's conduct."
> Subsections (b) and (c) then prescribed responsibility where the offense requires that the actor "intentionally or knowingly cause a result" or "recklessly or with criminal negligence," respectively, the former two in terms of whether "the result that actually occurred was desired or contemplated" and the latter two in terms of "whether the result that actually occurred was within the risk perceived or that which should have been perceived,"—both with certain conditions taking account of prescribed circumstances.
> Subsection (d) concluded with a statement of "transferred intent" in the same terms as present § 6.04(b)*(2)*; it did *not* include "(b)*(1)* a different offense was committed." The commentary explained, "The *only features* of the [common-law doctrine of constructive or implied malice codified in former articles 42.44] *retained* are the felony murder rule, Section 19.02, and the rule of transferred intent, this Section 6.07(d)." *Id.*,

Here, however, neither the information nor charge of the court identifies any "affected" person other than Stephani Barnes. We are thus left with the sole remaining aspect of subsection (b)(2), i.e., that "different ... property was injured, harmed or otherwise affected."

### B

The property alleged to have been damaged is the motor vehicle of Stephani Barnes; more specifically, the proof shows appellant bent and thereby damaged the windshield wipers on her van. So the "transferred intent" inquiry is whether such damage that "actually occurred" is *different from* what appellant "desired, contemplated, or risked." § 6.04(b)(2).[11]

However, the trial court did not put *that* issue to the jury. See application paragraph in appendix. Rather, the instruction authorized the jury to find that appellant intentionally or knowingly physically blocked with his person the Barnes' vehicle and further that:

> "by attempting to physically block said motor vehicle [of Barnes] with his person, if he did, *desired, contemplated, or risked that damage* to the said motor vehicle ... *would occur.*"

Then the instruction goes on to tell the jury that if it finds that appellant "*did then and there damage* ... a motor vehicle, without the effective consent of [Barnes], and [the

at 48. This subsection alone survived the legislative process practically intact.

**10.** See *Williams v. State*, 567 S.W.2d 507, at 508–509 (Tex.Cr.App.1978); *McNeal v. State*, 600 S.W.2d 807, at 808 (Tex.Cr.App.1980); *Aguirre v. State*, 732 S.W.2d 320, at 326 (Tex.Cr.App.1987) (opinion on rehearing); see also suggested instruction on "Transferred Intent" in McCormick & Blackwell, *Texas Criminal Forms and Trial Manual* § 83.07, 8 Texas Practice 130 (1993 Supp.).

**11.** The record facts summarized in note 1, *ante*, make it clear enough to me that the actual damage appellant inflicted is not a whit different from that which he intended to cause, was reasonably certain would result, or was aware or ought to have been aware the result would occur. § 6.03. Therefore, there is no accidental, mistaken, or unintentional act to which his "intent" may be "transferred" and attached. See Part II A, *ante*.

reasonable cost of repairing it *et cetera* ], you will find [appellant] guilty of the offense of criminal mischief as charged."

Those instructions, to adapt a trite phrase, "put the horse of 'what he desired, contemplated or risked' in the cart of what 'actually occurred,' " effectively conveying to the jury the notion that there is NO DIFFERENCE between what appellant had in mind to do and what he did. In other words of the court of appeals, "[the evidence sufficiently shows] that he either desired, risked, or contemplated the natural consequences of his acts—to damage someone's motor vehicle." *Price*, supra, at 25.[12]

Because the instructions are erroneous we should grant review to so hold, and to determine the consequences of our holding. Since the Court will not take steps to correct such mistaken construction of the law of "transferred intent," I respectfully dissent.

BAIRD and OVERSTREET, JJ., joins.

### APPENDIX

[Tr. 67]

You are instructed that our law provides that a person commits an offense if he, without legal privilege or authority, intentionally or knowingly obstructs a highway, street, sidewalk, entrance or exit to which the public or a substantial group of the public has access, or any other place used for the passage of persons, vehicles, or conveyances, regardless of the means of creating the obstruction and whether the obstructions arises from his acts alone or from his acts and the acts of others.

"Obstruct" means to render impassable or to render passage unreasonably inconvenient or hazardous.

[Tr. 76]

You are further instructed that, if you believe from the evidence beyond a reasonable doubt that on or about the 7th day of December, 1990, in Dallas County, Texas, the Defendant, John Wiley Price, did intend to, without legal privilege or authority, intentionally or knowingly obstruct a place used for the passage of persons and vehicle, namely, a driveway located adjacent to Ivan Street near the intersection of Ivan Street and McKinnon Street, in that the Defendant did intentionally or knowingly physically block with his person a motor vehicle being driven by Stephani Barnes from travelling upon the said driveway, and if you further find that the Defendant, by attempting to physically block the said motor vehicle with his person, if he did, desired, contemplated, or risked that damage to the said motor vehicle, without the effective consent of its owner, Stephani Barnes, would occur, and if you further find that the Defendant did then and there damage tangible property, namely, a motor vehicle, without the effective consent of the owner, Stephani Barnes, and that the reasonable cost of repairing the said property within a reasonable time thereafter was $20.00 or more, but less than $200.00, then you will find the Defendant guilty of the offense of criminal mischief as charged. If you do not so find, or if you have a reasonable doubt thereof, then you will find the defendant "Not Guilty."

12. In *Bagsby v. State*, supra, the Fort Worth Court of Appeals also dealt with "transferred intent" in relation to both "a different offense" and "a different person" under § 6.04(b)(1) and (2), respectively, as well in that case as "a different property."

It believed that the "knowing" culpable mental state of a person who issues or passes a payroll check without sufficient funds to one *person*, his employee, may be transferred from the completed *crime* of issuance of a bad check to the *crime* of theft of money from the *person* who cashed the check for the employee; it further opined that the "original or contemplated offense" "resulted in a loss of *property* (money)" to the owner of the business employing the person who cashed the payroll check. *Id.*, at 569, 570.

Whether a specific culpable mental state of actual or presumed "knowledge" that funds are insufficient to pay all outstanding checks, once fulfilled and thus no longer "contemplated," may still be "transferred" to serve as the *mens rea* for each of three different results is a question begging for an answer here.