No. 04-01-00455-CR



Ricardo SIERRA, Jr.,


Appellant



v.



The STATE of Texas,


Appellee



From the 187th Judicial District Court, Bexar County, Texas


Trial Court No. 2000-CR-5468


Honorable Raymond Angelini, Judge Presiding



Opinion by: Paul W. Green, Justice

Concurring opinion by: Catherine Stone, Justice


Sitting: Catherine Stone, Justice

 Paul W. Green, Justice

 Sandee Bryan Marion, Justice


Delivered and Filed: April 30, 2003 


AFFIRMED

 Ricardo Sierra appeals his conviction for aggravated assault and sentence of ten years
to the Texas Department of Criminal Justice - Institutional Division. On appeal, Sierra
contends the judgment should be reversed on the basis of jury charge error, ineffective
assistance of counsel, and improper jury argument. We overrule appellant's three issues and
affirm the judgment of the trial court. 

Background

 Ricardo Sierra was married to Erica Ramirez. The two had one daughter, Gabriella.
On September 6, 2000, Erica and her sister, Angela Ramirez , were speaking to their mother
on their parent's front lawn. The mother was with two of her grandchildren, including
Gabriella. While they were standing on the front lawn, Angela noticed a gray car drive by
which was similar to Sierra's vehicle. She said nothing. A few minutes later the car returned
and pulled into the driveway. Angela's first inclination was to go inside and get her father.
Erica stopped her because she thought it could be her ex-sister-in-law. Because it was a
"really big panic moment," the women ran inside the house. Angela was the first person in
the house. She stayed by the door as the others filed past her. She then closed the door and
locked it. Through the window of the door, she saw Sierra run towards them. Sierra pulled
out a gun, pointed it up and then down, and pulled the trigger. The bullet went through the
door striking Angela in the leg. According to Angela, Sierra was within a foot of the door
when this occurred. The two stood face to face with only the glass of the door separating
them. Angela testified that she and Sierra were "just kind of looking at each other." 

 Sierra testified in his defense. Sierra testified that Erica had obtained a restraining
order preventing him from visiting Gabriella. On September 6th, he called Erica to explain
to him why she had done this. On each occasion she hung up the phone. Sierra testified that
while he was home the "rage" mounted in him as a result of this and other things, such as his
his father's illness, the bad relationship with his ex-father-in-law, and being unemployed.
Sierra pawned his television and VCR to purchase a gun. After his purchase, he returned
home and "contemplated everything," including the consequences of his actions. Sierra
subsequently left his home with the gun under his car seat, intending to go to his brother's
house. Having missed the highway exit to his brother's house, Sierra drove to the Ramirez
residence. Sierra admits he passed the house one time and saw Angela and her mother. He
then drove around the block and returned and pulled into the driveway, "[braking] hard."
Sierra got out of the car and attempted to grab the gun. Initially, he couldn't find it. At this
time, he was aware that the women had entered the house. On a second attempt, he looked
back into the car, saw the gun, grabbed it and "jogged" towards the front door. Sierra
testified that he could not see anyone on the other side of the door. Because he didn't know
if someone was on the other side, he didn't want to shoot straight or up, so he decided to
shoot down. Sierra testified that he didn't mean to shoot Angela, but admitted the gun didn't
accidentally go off. Sierra specifically admitted that he held the gun, pointed it at the house,
and pulled the trigger. He also admitted he was aware it was dangerous to shoot even if he
saw no one on the other side of the door. 

Discussion

 In his first issue, Sierra complains that his conviction should be reversed because of
jury charge error. Specifically, he contends that the trial court erred in sua sponte charging
the jury on the definition of "deadly conduct," "recklessly" and "reckless," and inserting an
application paragraph that improperly merged deadly conduct and aggravated assault. Sierra
complains that by charging the jury as such, the trial court permitted the jury to find him
guilty of aggravated assault without proof of the requisite culpable mental state for
aggravated assault. The State first contends that Sierra waived this complaint because he
affirmatively approved of the trial court's charge. We disagree with the State. 

 At the jury charge conference in this matter, defense counsel requested a specific
charge on negligence that was denied. The court then inquired whether defense counsel had
"anything else," to which counsel replied, "No, sir." The State contends that this response
constituted an affirmative approval of the jury charge, and therefore, Sierra waived any claim
of error. In the area of preserving a complaint of jury charge error, we acknowledge that
some sister courts have, in the past, distinguished situations where a defendant fails to object
from situations in which the defendant affirmatively states that they have "no objection." See
e.g., Cedillo v. State, 33 S.W.3d 366, 368 (Tex. App.--Fort Worth 2000, pet. ref'd); Ly v.
State, 943 S.W.2d 218 (Tex. App.--Houston[1st Dist.] 1997, pet. ref'd); Reyes v. State, 934
S.W.2d 819 (Tex. App. Houston [1st Dist.] 1996, pet. ref'd); McCray v. State, 861 S.W.2d
405 (Tex. App.--Dallas 1993, no pet.); but see Webber v. State, 29 S.W.3d 226, 232 (Tex.
App.--Houston [14th Dist.] 2000, pet. ref'd ). (holding trial court committed both statutory
and constitutional error by omitting an instruction on presumption despite defendant's
affirmative statement he had no objection). However, we note that most of the cases on
which the State relies were issued before the Texas Court of Criminal Appeals opinion in
Huizar v. State, which held it was jury charge error for a trial court's failure to give the
statutorily required punishment phase reasonable doubt instruction regarding extraneous
offenses whether objected to or not. 12 S.W.3d 479, 494 (Tex. Crim. App. 2000).
Additionally, we note that in a recent opinion the Fort Worth Court of Appeals has
disapproved of its prior opinion in Cedillo to the extent that it could be read as a "universal,
blanket rule applied to all affirmative waivers of jury charge error . . . ." See Bluitt v. State,
70 S.W.3d 901, 905-6 (Tex. App.--Fort Worth 2002, pet. granted). In Bluitt, when defense
counsel was questioned on whether he had any objections to the jury charge, he responded,
"None." Following the Houston Fourteenth Court of Appeals opinion in Webber, the Fort
Worth court concluded that the affirmative approval analysis of jury charge error was
completely inconsistent with the egregious harm standard as articulated in Alamanza v. State,
686 S.W.2d 157 (Tex. Crim. App. 1985). Id. The court drew no distinction between waiver
by silence or by affirmative approval where there is jury charge error. See id. We too refuse
to follow such a distinction and follow the same reasoning. See id.; Webber, 29 S.W.3d at
231-32. Therefore, we conclude Sierra did not waive his complaint on jury charge error. 

 We next determine whether the trial court erred in providing the jury charge that it
did. While the parties disagree as to whether the trial court erred in instructing the jury on
deadly conduct and recklessness, their disagreement focuses on whether deadly conduct as
charged to the jury is a lesser included offense of aggravated assault. A review of the jury
charge in this case reveals that the parties' focus is misplaced because the court did not treat
deadly conduct as a lesser included offense in the charge.

 Sierra was indicted for aggravated assault as follows:

 [O]n or about the 6th Day of September, A.D. 2000, Ricardo Sierra, Jr.,
hereinafter referred to as defendant did then and there knowingly and
intentionally use a deadly weapon, namely: A FIREARM, and then and there
knowingly and intentionally CAUSE BODILY INJURY to ANGELA
RAMIREZ, hereinafter referred to as complainant, by SHOOTING THE SAID
COMPLAINANT WITH SAID DEADLY WEAPON. 


The parties agree that the trial court's charge offered two application paragraphs to the jury.
Sierra admits that the trial court properly charged the jury as to the definition of aggravated
assault and culpable mental states of knowingly and intentionally. Sierra, however, contends
the trial court exceeded its authority by also inserting a second application paragraph and
accompanying definitions on deadly conduct and recklessness. The trial court instructed the
jury as follows:

 A person is nevertheless criminally responsible for causing a result if the only
difference between what actually occurred and what he desired or
contemplated or risked is that a different offense was committed. 


 A person commits deadly conduct if he knowingly discharges a firearm at or
in the direction of a habitation and is reckless as to whether the habitation is
occupied.


 A person acts "recklessly," or is "reckless" with respect to circumstances
surrounding his conduct or the result of his conduct when he is aware of but
consciously disregards a substantial and unjustifiable risk that the
circumstances exist or the result will occur. The risk must be of such a nature
and degree that its disregard constitutes a gross deviation from the standard of
care that an ordinary person would exercise under all the circumstances as
viewed from the actor's standpoint. 


 Now, if you find from the evidence beyond a reasonable doubt that on or about
the 6th day of September A.D., 2000, Bexar County, Texas the defendant
Ricardo Sierra, Jr., did knowingly discharge a deadly weapon, namely: a
firearm at or in the direction of the house and was reckless as to whether the
habitation was occupied, but instead, caused bodily injury to Angela Ramirez
by shooting Angela Ramirez with a deadly weapon, namely: a firearm, then
you will find the defendant guilty of aggravated assault as charged in the
indictment.


 Unless you find beyond a reasonable doubt, or if you have reasonable doubt
thereof, you will acquit the defendant of aggravated assault. 


The court went on provide two verdict forms which stated whether they found Sierra guilty
of aggravated assault with a deadly weapon or that they found Sierra not guilty. 

 Given the court's verdict form, the jury was not charged or asked to find that Sierra
was guilty of the lesser included offense of deadly conduct. The court clearly charged the
jury and asked the jury to find aggravated assault. For this reason, we do not focus on
whether the trial court erred in charging the jury on deadly conduct as a lesser included
offense. 

 The State contends that the trial court's charge addressed the theory of transferred
intent and was proper under section 6.04 of Texas Penal Code. We agree. As codified, the
theory of transferred intent provides that a person is nevertheless criminally responsible for
causing a result if the only difference between what actually occurred and what he desired,
contemplated, or risked is that a different offense was committed or a different person or
property was injured. See Tex. Pen. Code Ann. § 6.04(b) (Vernon 1994). Under this
doctrine, if a defendant intending to commit a felony accidentally commits another felony,
he is guilty of the felony actually committed because the intent to commit the contemplated
offense transfers to the offense in fact committed. See Bagsby v. State, 721 S.W.2d 567, 570
(Tex. App.--Fort Worth 1986, no pet). Sierra was aware the women ran into the house. He
admitted the gun did not go off accidentally. Rather, he held the gun in his hand, pointed it
at the house, and pulled the trigger. Sierra also admitted he was aware that it was dangerous
to shoot into a house notwithstanding the fact that no one may be inside. Ramirez testified
that Sierra pointed the gun down and in her direction. Sierra then shot through the door,
striking her in the leg. The evidence in the instant matter raises the issue of transferred intent
from crime to crime. See Franklin v. State, 992 S.W.2d 698, 705-6 (Tex. App.--Texarkana
1999, pet. ref'd) (explaining the type of evidence needed to raise transferred intent). The
trial court properly applied transferred intent by instructing the jury that it first had to
determine Sierra committed deadly conduct; that is, Sierra knowingly discharged a firearm
into a habitation and was reckless as to whether it was occupied. See Tex. Pen. Code Ann.
§ 22.05(b)(2) (Vernon 1994). The jury was then asked to find whether Sierra ultimately
committed aggravated assault when the trial court states "but instead, caused bodily injury
to Angela Ramirez by shooting [her] with a deadly weapon . . . ." See Tex. Pen. Code Ann.
§ 22.02(a)(2) (Vernon 1994). Under the circumstances presented, we conclude that the trial
court did not commit any error in charging the jury accordingly. We overrule Sierra's first
issue.

 In his second issue, Sierra contends his conviction should be reversed because he
received ineffective assistance of counsel. Sierra specifically complains that both of his trial
counsel were ineffective for the following: (1) submitting a sworn application for community
supervision despite his being ineligible; (2) failing to make adequate inquiries of a jury panel
member; (3) eliciting prejudicial extraneous offense information; (4) reducing the State's
burden on reasonable doubt; (5) failing to object to an erroneous jury charge (1); (6) and
making conflicting requests for punishment. 

 It is well-established that in order to prove that his attorney rendered ineffective
assistance of counsel, Sierra must overcome the well-known two-pronged test articulated in
Strickland v. Washington, 466 U.S. 668, 687 (1964). See Bone v. State, 77 S.W.3d 828, 833
(Tex. Crim. App. 2002); Mares v. State, 52 S.W.3d 886, 890 (Tex. App. --San Antonio
2001, pet. ref'd). Under this test, we review the totality of the representation in light of facts
of a particular case to determine an ineffective assistance of counsel claim. Thompson v.
State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Sierra has the burden to prove ineffective
assistance of counsel by a preponderance of the evidence that his counsel's performance fell
outside the wide range of reasonable professional assistance. Generally, the record on direct
appeal will not be sufficient to show that counsel's representation was so deficient and so
lacking in tactical and strategic decision-making as to overcome the presumption that
counsel's conduct was reasonable and professional. Bone, 77 S.W.3d at 833. Where the
record contains no evidence of the reasoning behind trial counsel's actions, we cannot
conclude counsel's performance was deficient. Therefore, any allegation of ineffectiveness
must be firmly founded in the record and the record must affirmatively demonstrate the
alleged ineffectiveness. McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). 

 Sierra first asserts that trial counsel was ineffective for filing a motion for community
supervision despite the fact that he did not qualify for community supervision. Sierra would
not have qualified for probation because he was charged with aggravated assault with a
deadly weapon. See Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (Vernon Supp.
2003). Additionally, the record reflects he had a prior felony conviction. However, we do
not conclude that trial counsel's performance was deficient for filing such a motion. There
is nothing in the record to suggest that counsel did not properly counsel Sierra on probation.
The motion was not even signed by trial counsel, but by Sierra himself. Theoretically, Sierra
could have been the one to insist that such a motion be filed notwithstanding the fact that he
did not qualify for probation. Based on the record before us, we would be speculating that
counsel misinformed Sierra otherwise. This we will not do. 

 Sierra next complains that trial counsel was ineffective for failing to make adequate
inquiries of Juan Montoya, a jury panel member who indicated he had been the victim of an
attempted robbery. Sierra does not offer the type of inquiries that should have been made.
More importantly, he fails to show why trial counsel did not ask the questions he claims
counsel should have asked. Additionally, Sierra fails to show what Montoya's answers
would have been to additional inquiries. Without such information in the record, we can
only presume that counsel's decision to not pursue additional questioning was sound trial
strategy. See Strickland, 466 U.S. at 689. 

 Sierra also complains that counsel was ineffective for eliciting on direct examination
that he had been convicted for a felony offense in Kleberg County, Texas. Sierra admits that
this prior conviction was admissible and further admits that it was "objectively a trial tactic."
However, he believes trial counsel went too far in eliciting information on this prior
conviction leaving the jury with the impression that he had pled true to the offense in the
instant matter. Sierra misinterprets the record. Sierra testified that he was charged, pleaded
guilty, and was placed on probation for possession of marijuana. He subsequently pleaded
true to a motion to revoke probation. He testified that his probation was revoked "based on
the fact that [he] picked up this charge in San Antonio. . . ." Read in context, we cannot see
how the jury would have been misled to think that Sierra had pled true to the offense charged
in this case. Additionally, any wrong impression to the jury was corrected when, in closing
argument, the State clarified that Sierra had not pled true to the offense in this case. Sierra
has failed to show that counsel's performance was nothing more than trial strategy. 

 In his next complaint, Sierra contends that trial counsel was ineffective by "arguing
the misapplication of the standard of beyond a reasonable doubt." He complains that in
closing arguments trial counsel impressed on the jury that reasonable doubt could be satisfied
by a "51% standard" and thus "abdicated . . . [his] responsibility to hold the State to its
burden." Once again, Sierra misinterprets the record. Sierra's counsel stated the following
in closing arguments:

 We look at certainty as being one hundred percent, if that's what it is. Is
passable, fifty-one percent of what is reasonable doubt. You may think that you
have the final, let's say, thought on a particular issue and you say, yes, I am
certain that that's what it is. But then a later time, under different
circumstances you may say, well, I think that that's what happened. It looks
as if that's what happened. 

 But in this particular case you have to do it beyond a reasonable doubt. And
a reasonable doubt should be a certainty, to the extent that you know that that
is what happened. 


(Emphasis added). If anything, the record shows that trial counsel impressed to the jury that
reasonable doubt must be a "certainty." Sierra's complaint is without merit.

 Sierra also complains that trial counsel was ineffective in closing argument at
punishment for offering conflicting requests regarding the length of punishment. The record
reflects that Sierra's first counsel argued for a term of two years. Sierra's second counsel
then stated that Sierra may have "lost the option to get the minimal two years." However, he
also stated that it was the jury's prerogative to assess such punishment. When trial counsel's
statement is read in context, there is no conflict. Even if there was, Sierra has failed to show
how this was not part of counsel's trial strategy. See Strickland, 466 U.S. at 689. 

 Sierra has failed to show that counsel's performance was deficient; therefore, his
contention that he was provided ineffective assistance of counsel must fail. We overrule his
second issue. 

 In his final issue, Sierra contends that his conviction should be reversed for improper
jury argument made in closing arguments during the punishment phase. The record reflects
the following:

 [THE STATE]: And in Bexar County, it's time that we think about people like
this, and the families like that, and the rage that's associated, and we think
about Officer Hector Garza who went to the house like the Ramirez's home on
a day -

 [DEFENSE COUNSEL]: Judge, we're going to object. We feel that this is
certainly inflammatory. He's doing it for that purpose and it should not be
permitted by the Court, Judge. We object.

 THE COURT: Okay. That's overruled. 

 [THE STATE]: I want you to think about Bexar County citizens like Hector
Garza who went to a home on a family violence call and was shot dead by a
husband in rage. And I want you to think as citizens of Bexar County, are we
going to sit here collectively and let him get away with that type of action. And
the answer is no.


The record reflects that defense counsel then moved for a mistrial after the State's closing
arguments on the basis that the State's comments were inflammatory and not based on "any
type of evidence" offered in the case. (2) We conclude that the comment constituted a proper
plea for law enforcement. See Guidry v. State, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999)
(stating a plea for law enforcement as a proper topic for argument). Even if the State's
argument was improper, in that it exceeded the bounds of permissible argument, the error is
not reversible in light of the record as a whole. See Wesbrook v. State, 29 S.W.3d 103, 115
(Tex. Crim. App. 2000); Salazar v. State, 87 S.W.3d. 680, 684-85 (Tex. App.--San Antonio
2002, no pet.). Given the evidence presented to the jury regarding Sierra's guilt, we
conclude it is likely that the jury was not influenced by the State's remark. Sierra's third
issue is overruled. 

Conclusion

 For the reasons stated herein, we overrule Sierra's three issues on appeal and affirm
the judgment of the trial court.


 Paul W. Green, Justice




DO NOT PUBLISH


1. Having determined that the trial court did not err in submitting the charge that it did, Sierra's contention that
trial counsel was ineffective for failing to object to the jury charge is without merit.
2. Because the record reflects that appellant also objected on the grounds that the State's arguments injected facts
not in evidence, we disagree with the State's initial argument that appellant waived this issue because his objection did
not comport with his argument on appeal.